### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

———————————————————

MICHAEL D.J. EISENBERG,      )
                             )
        Petitioner,          )
                             )      Civil Action No. 1:19-cv-03006-ABJ
                             )
        v.                   )
                             )
OLDC, et al                  )
                             )
        Respondents.         )
———————————————————

### MEMORANDUM OPPOSING DEFENDANTS'
### MOTION TO DISMISS AMENDED COMPLAINT

### PRECIPIE

Michael D.J. Eisenberg, Petitioner or "Mr. Eisenberg", *pro se*, responds to "OLDC", Ms. Rachel L. Flecher Cipoletti, and Ms. Jessica H. Donahue Rhodes, (both in their individual and professional capacities), collectively "Respondents") December 16, 2019, (Docket #14) Pleadings.  The *Supremacy Clause* prevents Respondents from asserting any authority over Petitioner for his activities before federal agencies within the State of West Virginia ("WV"). Respondents' position this matter is precluded by the *Younger* Abstention Doctrine fails.

This matter does not fall within any of the three criteria for *Younger*:  1) there are ongoing state proceedings that are judicial in nature, 2) the state proceedings implicate important state interests, and 3) the proceedings afford an adequate opportunity to raise the federal claims. If it did, this matter falls within one of the three exceptions for Younger:  1) bad-faith prosecutions, 2) patently unconstitutional laws, and 3) unavailability of an adequate state forum.

The sole issue before this Court is not the *constitutionality* of Respondents' *underlying claims* but whether they even have the *constitutional jurisdiction* to begin and investigate Petitioner.

This matter starts and ends with Jurisdiction:  If Respondents do not have jurisdiction to act in this matter then this matter ends (as it can never begin).  Set forth in Petitioner's October 7, 2019, Complaint, December 2, 2019, Amended Complaint and those set forth below, Petitioner's Motion for Preliminary Injunction and request for related Damages Should be Granted.

## DISCUSSION

### *Chronicle*

Note of an e-mail exchange between the Parties[1]:  Petitioner asked Respondents the basis for their claim noting that *Sperry v.  Florida,* 373 U.S. 379 (1963) prohibits state bar associations from regulating parties, attorneys and non-attorneys who appear before federal agencies.  See Exhibit 1S[2].  Respondents replied that besides Rule of Professional Conduct ("Rule") 8.5, several court cases supported their jurisdiction over out-of-state parties who, not licensed in their state, represented their in-state residents.  See Exhibit B.  Petitioner meticulously and soundly informed Respondents that each case on which they relied specifically and clearly did not apply to him:  Mr. Eisenberg was 1. not a member of its attorney's bar[3]; 2. did not live in WV[4]; 3. did

---

[1] See Exhibit 1S.

[2] Documents identified with "S" will be moved to be Sealed.

[3] *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116, 1982 U.S. LEXIS 2638, 50 U.S.L.W. 4712 and see also fns 5 & 6, *infra.*

[4] *State Ex Rel. York v. W.Va. Office of Disc. Counsel*, 213 W.Va. 183, 744  S.E.2nd 293 (2013) and *Iowa Sup. Ct. Attorney Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 266 (Iowa 2010). (The attorney was licensed to practice law in Minnesota but had "maintained offices in Iowa and  provided legal services to persons in Iowa on federal immigration matters" for two years.) See also *Nat'l Ass'n for the Advancement of Multijurisdictional Practice v. Roberts*, 180 F. Supp. 3d 46, 59-60 (D.D.C. 2015) (The D.C. Bar did not extend its jurisdiction over out-of-

not main an office in WV[5]; and 4. did not maintain regular contacts with WV[6].  See Exhibits 2S and 3S.

In reply to Petitioner's defense, Respondents provided no response to Petitioner's complete refutation of Respondents' case law claim:  Their only response was that Rule 8.5 gave them the ability to act in this matter.[7]  Thus, given Respondents' failure to acknowledge that *Sperry,* its progeny and the case law **they** put forward to refute Mr. Eisenberg's assertion do not support their claim; Respondents are unwilling to adhere to controlling federal law.  Exceptional circumstances arise from a State acting where it clearly knows it had no jurisdiction to act.

### *Argument*

I. **Respondents have no jurisdiction over Petitioner's federal activities within its state.**

Respondents argue that Petitioner cannot prove by a preponderance of the evidence that this Court has jurisdiction to hear this matter.  Their reliance on *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) and its progeny fails.  As discussed below, Petitioner can by if not beyond a preponderance of the evidence that this Court **does** have jurisdiction in this matter; especially since Respondents NEVER had jurisdiction over him to start an investigation over him.

---

state attorneys who did not have a "principal law office," and thereby a physical presence, in Washington D.C.)

[5] See fns 3 &4, *supra*.

[6] *Id*.

[7] Respondents' informed Petitioner that an Investigative Panel of the Lawyer Disciplinary Board meeting occurred on September 21, 2019.  Mr. Eisenberg was provided no notice or opportunity to appear or respond to this meeting.  This is one example of how Respondents failed to provide him any procedural due process during this phase.  Respondents ignored as they failed to address the Constitutional claims Mr. Eisenberg brought to their attention.  See Exhibit C.

From Respondents' brief "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction." See Respondents' December 16, 2019, Memorandum in Support of Defendant's Motion to Dismiss Amended Complaint ("Respondents' Memo") (Dckt#14.1) at 3 citing *Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004). Respondents do not have jurisdiction over parties, including Mr. Eisenberg, who solely appear[8] before a federal agency representing a federal employee.[9]  Further, Respondents' intrusion into federal (agency) activity exclusively in the federal domain due to the Supremacy Clause is the precise issue that our Founding Fathers did not want, is prohibited by the Constitution and the 14th Amendment, and is within <u>this</u> Court's jurisdiction to act. Jurisdictionally, Plaintiff's activities cannot trigger a bar complaint in West Virginia.

Respondents assert that since the WV State Bar Complaint process has begun by filing two concurrent bar complaints, Plaintiff is precluded from asking this Court for assistance.  See Respondents' Memo at 10.  The sole issue brought before this Court is Respondents' lack of jurisdiction as they are precluded by federal law from starting a review of Mr. Eisenberg's actions before a federal agency.  Mr. Eisenberg is not a member of the WV OLDC, does not practice before WV State Agencies or WV State Court, does not maintain an office in WV, or have routine contacts in WV.[10]  Any purported WV Judicial civil proceedings that involve the

---

[8] Sans the exceptions listed in fns 3, 4, 5 & 6.

[9] Respondents may have in independent claim of jurisdiction over Plaintiff **if** Plaintiff were a member of its bar, lived in WV, maintained an office in WV or had routine contacts in WV.  BUT he does not.  This is further discussed below in section III.ii, *infra*. and fns 3, 4, 5 & 6 *supra*.

[10] See fns 3, 4, 5 & 6.

ability of courts to perform their judicial functions is void *ib abnito* as WV has no substantive or personal jurisdiction over Mr. Eisenberg to even begin an investigation.[11]

Respondents acknowledge that "jurisdiction" is the start and end of a legal action.  See Respondents' Memo at 3.  The two WV OLDC bar complaint claims in question are related to Plaintiff's actions as it relates to his practice solely before federal agencies.  In *Sperry v. Florida,* 373 U.S. 379, 83 S. Ct. 1322, 10 L. Ed. 2d 428 (1963) and its progeny, it is well established by our Supreme Court that states may not regulate practice before a federal agency.[12] Mr. Eisenberg not only informed Respondents of *Sperry* in communications prior to this action[13], Respondents cited *Sperry* in their own brief[14]; yet, they failed to respect this legal precedent. (This is just one more fact to support Petitioner's bad-faith *Younger* exception argument discussed in § III.i, *infra.*).  Respondents' reliance on *Middlesex*, *Ford* and other case law fails to justify their actions.

Mr. Eisenberg's situation is entirely different than the *Middlesex* petitioner and other related cases in one key aspect – collectively, he is not a member of its bar, does not reside in WV, does not maintain an office WV, and does not maintain routine contacts in WV.  The attorney in *Middlesex* is actually licensed by the state bar association in question.  *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 425.  This is recognized by

---

[11] The Constitutional violation that Mr. Eisenberg can raise (and will seek to amend to include) is that Respondents are denying his Constitutional Right (Article IV, Section 2, Clause 1) to travel freely between states (to practice at a federal agency), denial of due process rights (as there is no procedure to appeal an investigation that Respondents had no jurisdiction to start.

[12] See discussion of *Sperry,* its progeny and related cases in § III, *supra*.

[13] See Exhibit 1S.

[14] See Respondents' Memo at 11, fn 7.

Respondents:  "The Supreme Court has declared that a state's interest in regulating **its** licensed attorneys constitutes one such interest."  Respondents' Brief at 7 citing _Ford v. Tait_, 163 F. Supp. 2d 57 at 58 _referencing Middlesex_ at 434 (emphasis added). The issue before the _Middlesex_ court was not of personal jurisdiction over the petitioner.  Rather, the issue in _Middlesex_ was whether the bar was violating Middlesex's personal Constitutional First Amendment rights by attempting to regulate his speech.  The question was never one of jurisdiction:  The bar licensing entity in _Middlesex_ had jurisdiction over the attorney in _Middlesex_ because the _Middlesex_ petitioner was a member of its bar.  Unlike _sub judice_ where Petitioner is not a member of the WV Bar Association.

In Ford v. Tait, 163 F. Supp. 2d 57, the petitioner asserted that his procedural due process rights were deprived <u>during</u> his disciplinary proceedings.  Jurisdiction was not an issue in _Ford_ since Ford was a member of the bar association in question.  This is the same for Mr. Klayman in _Klayman v. Fox_, No. 18cv1579, 2019 WL 2396538 (D.D.C. June 5, 2019).  The Office of Disciplinary Counsel ("ODC") for the District of Columbia already had jurisdiction over Klayman because he was a licensed member of the D.C. Bar.  The question was not whether the bar authority had jurisdiction over Ms. Klayman: It was whether ODC was abusing it enforcement powers.  In _Scotchel_, the issue was not if it could start an investigation.  The issue before the court was of its court's _process._  Schotchel was filing an injunction to stop judgment (because it could not afford to post bond) after a state court made its ruling.  Scotchel v. Karlin, 2018 U.S. Dist. LEXIS 49600, 2018 WL 1512378 *3 (S.D. W. Va. Mar. 26, 2018, _Schotchel v. Rhodes_, 764 F. App'x 302 (4th Cir. 2019); _Dostert v. Neely_, 537 F. Supp. 912, 918 (S.D. W. Va. 1982).  Petitioner's complaint is not about the procedural requirements WV Courts have; it's

about whether the Respondents even have jurisdictional authority over him to begin and investigate.

Respondents have no jurisdiction over Mr. Eisenberg.  Besides not being a member of its bar association, Mr. Eisenberg does not maintain an office in WV, does not reside in WV, and does not make routine contacts in WV.  Respondents should have automatically dismissed the two claims similar to Respondents' *Lujan* claim in this court.  <u>With no jurisdiction, Respondents have no ability to start an investigation</u>.  The fear that Respondents will intrude in jurisdiction where they have no standing is neither *imaginary* nor *speculative* as Respondents are actively attempting to do so today – their actions brought Petitioner to this Court.[15]

## II.  **Respondents' claim that *Younger's* prohibits this Court's intervention FAILS.**

*Younger v. Harris* sets forth the judicially created principle that federal courts may not enjoin certain state court proceedings.  See *Younger v. Harris*, 401 U.S. 37 (1971).  As Respondents provide:

> The *Younger* doctrine, based upon principles of equity and comity, 401 U.S. at 43– 44, 915 S. Ct. at 750, precludes federal intervention where three criteria are met: 1) there are ongoing state proceedings that are judicial in nature, 2) the state proceedings implicate important state interests, and 3) the proceedings afford an adequate opportunity to raise the federal claims. *Bridges*, 84 F.3d at 476 (citing *Hoai v. Sun Ref. Mktg. Co.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989)).

Respondents' December 16, 2020, Brief at 6.  These criteria are not met *sub judice*.  The courts have also recognized there are exceptions to these barriers where a federal court may still

---

[15] Justice Black, writing for the majority in *Younger*, notes that the federal courts would have no standing to intervene for "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases." *Younger* at 42.

intercede.  Even if *Younger* did apply, there is at least one, if not more, exceptions under

*Younger* and its progeny directing this Court to intervene. See § III, *infra*.

     i.  *The Three Criteria Precluding Federal Intervention are not met.*

         1.  *A Bar Disciplinary "Investigation" is not a State Civil or Judicial Proceeding.*

            a.  THE RECORD IS VOID OF RESPONDENTS STARTING A STATE CIVIL OR JUDICIAL PROCEEDING.

Respondents have not started a Bar Disciplinary or Judicial Proceeding; they cannot start

any either.  It must be acknowledged that the Supreme Court has opined "'[t]he policies

underlying *Younger* fully apply to noncriminal judicial proceedings when important state

interests are involved."  *Middlesex* at 432.

> The bar disciplinary actions were considered judicial because they were
> supervised and reviewed by the state supreme court and because they were closely
> related to the functioning of the state's judicial system. The state's interest was
> deemed "extremely important" because of the need to maintain and ensure the
> "professional conduct" of attorneys.

Aspen Treatise for Federal Jurisdiction (Aspen Treatise Series) (p. 899). Wolters Kluwer. Kindle

Edition.  As the WV Courts should (presumedly) dismiss an action before it that was not within

its jurisdiction, so too should Respondents.

The record is void of any public docket of any disciplinary proceeding, e.g., an

admonition, formal or informal, by WV bar counsel, reprimand, formal or informal by WV bar

counsel, sanctions by counsel, or any Order or action by a WV state court or state agency,

actually filed against Petitioner.

Respondents' assert that our Supreme Court identified the investigation stage of a

disciplinary proceedings as part of the proceedings.  Albeit disputed by Petitioner, assuming

*arguendo*, the investigation stage does not provide Petitioner with any procedural safeguards

from Respondents either starting an investigation or during their investigation.  This directly

conflicts with the Supreme Court in *Steffel* and *Doran*.  They provide that disciplinary proceedings are akin to criminal proceedings with all of its procedural protections but investigations that have no procedural protections are not immune from the *Younger* Abstention Doctrine.

The Supreme Court used by analogy that a state bar complaint process has similar protections as a criminal process.  Based on this *starie decisis*, we must then use this same analogy to determine when a state bar complaint process actually begins.  The Supreme Court has found federal court intervention acceptable when there are no actual ("criminal") court proceedings.

> In *Steffel v. Thompson*, the Court found that "[w]hen no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system." Steffel v. Thompson, 415 U.S. 452, 462, 94 S. Ct. 1209, 1217, 39 L. Ed. 2d 505, 516, 1974 U.S. LEXIS 112, *20. Moreover, in the absence of a pending state proceeding, federal court action cannot "be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles."[16]

Aspen Treatise (p. 912).

This Court's intervention is bolstered by the Supreme Court's ruling in *Doran. V. Salem Inn, Inc*.  In *Doran*, the Court found the Petitioners, the two not in state court proceedings, may receive an injunction issued by the federal court "…because there is no available forum in which to raise the constitutional claims [as they were being threatened with state prosecution].[17]" *Id.*

---

[16] *Id*. See Barry Friedman, *Under the Law of Federal Jurisdiction: Allocating Cases Between State and Federal Court*, 104 Colum. L. Rev. 1211, 1248-1254 (2004) (explaining why litigants who have not yet violated a law should have access to a federal court to determine the constitutionality of the law).

[17] See also *Ankenbrandt v. Richards*, 504 U.S. at 705 (1992) (holding that it was clearly erroneous for a federal district court to apply *Younger* abstention in the absence of a pending state prosecution.

889.  Likewise, Mr. Eisenberg is being threatened with state prosecution and no actual prosecution is taking place; thus, this Court's intervention is not barred.

In both *Steffell* and *Doran,* the successful parties defeated the *Younger* argument because the respective State was only *investigating* the matters.  The state officials were not prosecuting the matters in court nor were their investigations, in-and-of-themselves, appealable to a state court.  There were no procedural protections at the investigation stage just like *sub judice*.[18]

Respondents assert that Petitioner can get *protections* from state process *once* it is before their state Supreme Court and gone through its state's procedures.  See Respondents' December 6, 2019, Brief at 10, fn 7.  (Petitioner disputes whether he can get an adequate forum to fair hearing to contest Constitutional Jurisdiction, see § III.iii, *infra*.)  But as discussed above, Respondents provide no safeguards *during* its investigation!

> The Middlesex County case raises troubling questions. In *Younger*, the Court emphasized that federal court relief was unnecessary because constitutional claims could be raised in the pending state judicial proceedings. Yet in Middlesex County, there was no indication that the state administrative bodies were empowered to hear and decide the attorney's constitutional claims. In *Younger*, the Court emphasized the need for federal deference to state judicial proceedings; comity is the respect owed to the court system of another sovereign. But the extension of deference to state administrative actions cannot be justified without substantial explanation, which was absent in Middlesex County.

---

[18] It's important to note that *Augustine v. VA* held that federal law may adopt or incorporate state law standards as its own. *Augustine v. VA*, 429 F.3d 1334, 1340 (Fed. Cir. 2005). However, where there is "statutory and regulatory silence, the presumption here again is that federal law does not incorporate state standard." Id. at 1342. West Virginia Rules of Professional Conduct only addresses sanctions of attorneys under or subjects themselves to its jurisdiction. The *York* Court held for West Virginia State Bar's jurisdiction over the attorney because of his West Virginia-based affiliation, where he would otherwise have no connection to West Virginia. 231 W. Va. 183. West Virginia State Bar's Rule of Professional Conduct 5.5(d)(1) and ABA Model Rule 5.5(d)(1) support the *York* Court's finding in that there's jurisdiction over an out-of-state attorney appearing before a federal agency specifically because of his West Virginia-based affiliation.

*Aspen Treatise* 899-900.  Respondents assert that the U.S. Supreme Court identified the investigation stage of a disciplinary proceedings as part of the proceedings.  But if this were true, the investigation stage does not provide Petitioner with any procedural safeguards from Respondents either starting an investigation or during their investigation.  This directly conflicts with the U.S. Supreme Court providing that disciplinary proceedings are akin to a criminal proceedings with all of its procedural protection but investigations that have no procedural protections are not immune to the *Younger* Abstention Doctrine.

Conversely, Respondents' citation of other cases constituting "similar actions based on *Younger* abstention" were all beyond the investigation stage.  They were in actual state judicial disciplinary proceedings, i.e., an investigation **had** been conducted.  As the Respondents' noted in *Ford*:

> In this case, the state judicial proceeding is also **ongoing**.  The plaintiff filed exceptions to the Bar Counsel's informal admonition to the Board of Professional Responsibility, which has yet to render a decision.  Accordingly, the case has yet to reach the D.C. Court of Appeals.  When the remaining prongs of the *Younger* test are satisfied, "federal courts should refrain from enjoining lawyer **disciplinary proceedings** initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate state Supreme Court."  32A AM. JUR. 2D *Federal Courts* § 1303 (1995); *see also Middlesex*, 457 U.S. at 431–32, 102 S. Ct. 2515.  The court concludes that there is an ongoing state proceeding that is judicial in nature.

Respondents' Brief at 7 citing *Ford*, 163 F. Supp. 2d at 65 (emphasis added).  Respondents' (attempt to start an) investigation (that) is not within its state supreme court's appellate jurisdiction.  There is no process to appeal the start of or during Respondents' investigation.  This is no more reviewable by its state court than initiating an investigation by its police; a review, as per *Steffel* and *Doran,* can be made by **this Court**.

The cases cited by Respondents used to support their position were all pending before the respective courts – not just being potentially investigated as is the case here.  The Respondents

appear not to have provided even one case that is in the preliminary or actual investigation stage. The question is whether Respondents can regulate an individual who has no meaningful ties to their state other than occasionally traveling to it, sometimes through it and represent a state resident solely before a federal agency.  See also § IV, *infra*.  Further, he is not a member of its legal bar.  The Constitution does not permit an investigation that the Respondents have no authority to start.  Therefore, the *Younger* Abstention Doctrine does not bar this Court's intervention.

- *There are no proceedings that involve the ability of courts to perform their actual judicial functions.*

A federal court generally should not intervene when "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function."  The progeny of *Younger* have prevented federal court intervention when state courts require a bond for an appeal[19], order sanctions against one party[20] or even a violation of a party's Constitutional Right to freedom of speech.  But, to the detriment of Respondents, these preclusions in their cited state cases were actually being adjudicated **in court**; unlike *sub judice* where no case or controversy is before any WV State Court or even an OLDC tribunal.  The Respondents appear to have failed to provide a single case of where a federal court was not allowed intervention at the start or during an investigation phase meeting Petitioner's specific criteria of not being a member of its state bar, not a state resident, not maintaining an office in WV and not maintaining regular contacts in WV.  Therefore, this matter is not ripe for Respondents to raise *Younger*.

---

[19] 481 U.S. 1, 10 (1987).
[20] 430 U.S. 327, 335 (1977).

2. *Respondents' action against Petitioner **does not** implicate important state interests.*

Respondents assert this matter implicates important state interests.  Respondents have absolutely no interest in Petitioner since they have no jurisdiction over parties who practice before a federal agency.[21]  Respondents do have an interest in protecting their citizens from erroneous attorneys practicing law within its jurisdiction, e.g., members of its state bar, appearing before state agencies, state courts and federal courts.  But, as discussed in § I, *supra*., Mr. Eisenberg has no significant ties to WV and therefore cannot be regulated where the state has no jurisdiction to act.

3. *Respondents' "proceedings" do not afford an adequate opportunity to raise federal claims.*

Respondents failed to provide Petitioner any proceedings during its "pre- investigation" / "investigation stage" where he can raise federal claims.

b.  LACK OF PROCEEDINGS.

This section adopts and incorporates §III.iii, infra.

The "pre- investigation"/ "investigation" portion of Respondents' action provide no *proceeding* for Mr. Eisenberg to raise his federal "jurisdictional" claims.  Respondents assert that the Investigative Panel of the Lawyer Disciplinary Board reviewed the matter and made a determination that its Rule 8.5(a) solely applied in this matter; it made no mention of *Sperry*.  See Exhibit C.  Petitioner was not provided any notice of the Panel's meeting, an opportunity to appear be heard and appear before the Panel or a copy of their alleged decision.  Without an

---

[21] See § I, *supra*.

opportunity to bring forth Petitioner's constitutional claims, let alone a constitutional right of due process, it is appropriate for this Court to act.

Mr. Eisenberg will not get a fair and unbiased hearing from Respondents after they conclude their investigation.  Respondents have proselytized the WV Supreme Court's position that *Sperry* will not apply in Petitioner's matter.  First, it is the regulatory body of the WV Supreme Court.  As an administrative body of the state court, it has already signaled (with no process for Mr. Eisenberg to participate) its State Court will find that *Sperry* does not apply in his situation.  This is further bolstered by its proclamation that **after** Petitioner has been through its state Supreme Court **then he** can seek redress before the U.S. Supreme Court.  See Respondents' Memo at 11, fn 7.

Respondents' have stated that *Sperry* does not apply, contrary to the facts.  See *Bad Faith Exception* discussion in § III.i, *infra*.  *Comity* cannot be an obstacle for a federal court when the state agency has already made it abundantly clear that it and its governing body, the WV Supreme Court will not follow the supremacy of federal law (as dictated by *Sperry*).  These actions show both Respondents' bias and inability to provide Petitioner a fair hearing at a future date.

III. **All three of the *Younger* Abstention Doctrine exceptions would apply if this Court was to find this matter initially fell under Younger.**

There are three exception circumstances to *Younger* in this matter that require this Court to intervene.  The three exceptions are bad-faith prosecutions, patently unconstitutional laws, and unavailability of an adequate state forum.

   *i.  Bad-faith prosecution*

Respondents' actions amount to a bad-faith prosecution.  "The definition of a bad-faith prosecution is when 'a prosecution has been brought without reasonable expectation of obtaining

a valid conviction.'" Chemerinsky, Erwin. *Aspen Treatise for Federal Jurisdiction* (Aspen

Treatise Series) (p. 905-906). Wolters Kluwer. Kindle Edition citing *Kugler v. Helfant*, 421 U.S.

117, 126 n.6 (1975).  For example, in *Wooley v. Maynard*, 430 U.S. 705 (U.S. April 20, 1977),

several prosecutions had been levied against Maynard for the same matter in less than two

months.

> The Supreme Court declared the state's statute unconstitutional and upheld the
> injunction. Although the Court said there is a general policy against federal courts
> enjoining enforcement of criminal statutes, it held that injunctions are appropriate
> in "exceptional circumstances" upon "a clear showing that an injunction is
> necessary to afford adequate protection of constitutional rights.

*Aspen Treatise* at 890.

The Respondents' cited *Sprint* to further note the nuanced definition of the Younger

Doctrine bad faith exception:

> It is not this Court's role to decide whether the disciplinary charges pending
> against Plaintiff are well-founded or whether Plaintiff is likely to ultimately
> prevail.  The question is not whether other state bars have declined to pursue
> similar charges or  whether everyone on the ODC team agrees with each decision
> the office has made.  The only issue before this Court is whether Plaintiff has
> alleged specific facts that, if accepted as true, plausibly show that the ODC is
> proceeding without a reasonable expectation of success.

Respondents' December 16, 2019, Brief (Dck# 14.1) at 9.  TO BE VERY CLEAR, this Court is

not being asked to render an opinion on the (disputed[22]) merits of the underlying claims.

Petitioner has not raised or argued merits contained within the two claims.[23]  There are several

examples of Respondents' bad faith:

---

[22] Although this case is about a State asserting jurisdiction where it does not exist, it
should not be assumed by this Court (or any party) that Petitioner in anyway acquiesces to the
underlying bar complaint.
  [23] *Id.*

First, and most notably, is Respondents' use of *Sperry* in their defense and earlier communications with Petitioner.  They argue, albeit disputed by Petitioner, that Petitioner has an adequate forum, i.e., the WV judicial process (the start of which is disputed, see § I, supra.) to raise his defenses **after** they completes their investigation.  Respondents fail to recognize that ultimately *Sperry* actually cuts against their argument.

In *Sperry*, Mr. Sperry was a non-attorney performing work before the Patent Trade Office.  He both worked and resided in the State of Florida.  He was admitted by the federal government to practice before the PTO.  The State of Florida Bar association disciplined him for practicing law in its state without a license because of his activities and location in conducting them

Mr. Sperry defended himself throughout the entire State Bar Disciplinary Process.  In response to the Respondents comment "*Sperry* offers no support for Eisenberg's collateral attack on the disciplinary proceedings filed against him"[24], it is unknown why Mr. Sperry did not take his action straight to Federal District Court once the Florida Bar brought this matter to light.  It may have been due to his not being a lawyer.  It may have been because he could not afford an attorney.  It may have been that the *stare decisis* had not yet been established by *Sperry*.  Regardless, because of Sperry's failure to pursue an avenue for possible remedy, does not mean it does not exist.

Mr. Sperry not only endured the stress and financial burden of defending himself during the State of Florida's Bar Disciplinary Process, the Florida Courts and the United States Supreme

_____

[24] See Respondents' Memo at 11, fn 7.

Court but damage to his professional reputation during the public process of his defense throughout the above.  It was not until **after** Mr. Sperry left the state judicial process and proceeded to the United States Supreme Court he was vindicated:  The Court found that the State of Florida never had jurisdiction over Mr. Sperry and activities to begin with!  See generally *Sperry.*

Respondents have been presented with this information.[25]  They have argued that *Sperry* will provide a resolution *after* it concludes its investigation.  See Respondents' December 16, 2019, Brief at 11, fn 7.  *Sperry* (and its progeny) invalidates Respondents' ability to regulate Petitioner.  Thus mooting the investigation, the WV OLDC disciplinary procedures and the WV Supreme Court process.  Since Respondents are officers of the WV Supreme Court, the potential procedures (as this injunction is proposed to prevent from starting) are pre-determined – that *Sperry* will not be applied properly, and thus concluding the State of WV will not provide a fair proceeding for Petitioner.

*Dombrowski v. Pfister* provides further support to stop Respondents' meaningless actions. "The *Younger* Court distinguished *Dombrowski v. Pfister* by observing that the latter case involved successive state court prosecutions for the purpose of harassment and not conviction.  *Aspen Treatise* at 906 (internal citation omitted).  In *Dombrowski*, the Court found that the petitioners faced "substantial loss or impairment of [Constitutional Rights] … if [petitioners] must await the state court's disposition and ultimate review in this Court of any adverse determination. [Their] allegations, if true, clearly show irreparable injury.  *Dombrowski*

---

[25] See discussion in § *Chronicle*, *supra* referencing and Exhibit 1S – 3S.

*v. Pfister*, 380 U.S. 479, 486 ".  See also *Gibson v. Berryhill*, 411 U.S. 564 (1973).[26]

Respondents do not provide a meaningful process to appeal their unconstitutional assumption of

jurisdiction **during** their pre-investigation/investigation phase.

This matter is also akin to the administrative appeals process discussed in *Ohio Bureau of*

*Emp't Servs. v. Hodory*, 431 U.S. 471, 97 S. Ct. 1898 (1977) (emphasis added):

> The court held that exhaustion of administrative remedies would be futile because **the administrative appeal process would not permit a challenge to the constitutionality of the statute,** and the Ohio courts had held the statute to be constitutional. Id., at 1019, and n. 1. Although the court observed that Huffman v. Pursue, Ltd., supra, broadened the Younger doctrine "to include a prohibition against federal court interference with certain ongoing civil proceedings in the state courts," 408 F. Supp., at 1019-1020, the court held that Huffman "was limited to the enjoining of ongoing state-initiated judicial proceedings," 408 F. Supp., at 1020 (emphasis in original), and **did not apply to a challenge to administrative actions**. Finally, the court held that abstention, along the Pullman line, "would not be proper in this case" because the challenged statute is not an ambiguous one "involving unsettled questions of state law which could be rendered constitutionally inoffensive by a limiting construction in the state courts." 408 F. Supp., at 1020. The court concluded that it would be improper to require the appellee "to undertake three administrative appeals" before he could challenge the statute in state court "where, moreover, the issue as to the constitutionality of the labor dispute disqualification has apparently been settled." Ibid.  In this Court, as has been noted, appellants have not argued that *Younger* requires a remand with directions to the District Court to abstain, and at oral argument they resisted the suggestion of such a remand. Tr. of Oral Arg. 9-10. Instead, it is amicus Republic Steel that has made the suggestion. Younger v. Harris reflects "a system in which there is to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." 401 U.S., at 44. See *Huffman v. Pursue, Ltd.*, 420 U.S., at 604; *Juidice v. Vail*, 430 U.S., at 334; *Trainor v. Herandez*, ante, at 441-443, 445-446, and id., at 448 (concurring opinion).

---

[26] "Gibson suggests that federal courts may give relief, notwithstanding the existence of pending state proceedings, if state tribunals are biased and are not to be trusted on the particular issue."  *Aspen Treatise* at 910.

Younger … express[es] equitable principles of comity and federalism. They are designed to allow the State an opportunity to "set its own  house in order" when the federal issue is already before a state tribunal.  It may not be argued, however, that a federal court is compelled to abstain in every such situation.

The U.S. Supreme Court in *Gibson v. Berryhill*, 411 U.S. 564 (1973) "stated specifically that administrative remedies need not be exhausted where the federal court plaintiff states a good cause of action under 42 U.S.C. § 1983." *Hodory v. Ohio Bureau of Employment Service*s, 408 F. Supp. 1016, 1019.  Here, Petitioner has been arguing from the beginning that Respondents have been abusing their power to investigate, initiate and prosecute a disciplinary proceeding that will ultimately prove to be fruitless under *Sperry.*

Respondents are arguing that Petitioner should submit to a frivolous proceedings ultimately found by the U.S. Supreme Court to be fatal for Respondents.  The investigation provides no due process to afford any protection of Mr. Eisenberg's jurisdictional Constitutional rights and the WV OLDC and Supreme Court are admittedly biased.  This only serves as evidence that Respondents are acting in bad faith:  They simply want their pound of flesh.  By Respondents' logic, they will first professionally, economically and emotionally harm Mr. Eisenberg by running him through a pre-determined[27] state process.  Then they will be corrected by the U.S. Supreme Court via *Sperry after* it has irrevocably injured Petitioner.

*ii.   Patently Unconstitutional Laws*

Petitioner's matter meets the second exception to the Younger Abstraction Doctrine, Patently Unconstitutional Laws.  "Justice Rehnquist concluded [in *Moore v. Sims*, 442 U.S. 415] that a federal court should abstain as long as proceedings exist in the state system to adjudicate

---

[27] See §§ III.iii & V, *infra.*

the constitutional claim. He wrote that "abstention is appropriate unless state law clearly bars the **interposition** of the constitutional claim." *Aspen Treatise* at 70. Respondents rest their argument solely on West Virginia Rule 8.5. Its rules are based on WV legislation.[28] If its rules and legislation was strictly enforced to its licensed members, business entities, attorney-residents and attorneys with routine contacts to its state then it may not be Patently Unconstitutional.[29] But *sub judice* is starkly different: Petitioner is not a member of the WV Bar, not a resident of WV, does not have an office in WV and does not maintain regular contacts with the state. See § I, *supra*. Respondents are attempting to use state law to encroach upon areas of federal law solely administered by the federal government as precluded by *Sperry* then the state law cannot Constitutionally stand.[30] Thus, meeting this *Younger* exception and ripe for this Court to hear and strike down.

Further, Respondents' actions amount to violating Mr. Eisenberg's right to freely travel between states. The "Privileges and Immunities" guaranteed to citizens of the several states by Federal Constitution, secures right of citizen of one state to pass into any other state for purpose of engaging in lawful business, without molestation. USCS Const. Art. IV, § 2, Cl, Ward v.

---

[28] The West Virginia Supreme Court of Appeals ("WVSCA") gets its power to create the West Virginia Office of Disciplinary Counsel ("WVODC") from its inherent rulemaking authority granted by Article VIII of the West Virginia State Constitution, which itself is reaffirmed and elaborated on by the WVCSCA's statutory grant of rulemaking power under § 51-1-4a. W. Va. Const. art. VIII, § 3; W. Va. Code § 51-1-4a.).

[29] Further, the Respondents' are asserting that Petitioner must submit to their disciplinary bar and submit to punitive action(s) (which could amount to economic harm directly or indirection, e.g., harm to his professional reputation, see §§ III.iii & V, *infra.*, ) in a state where, he does not have significant contacts, including bar membership, amounts to an improper tax in violation of the 5th and 14thAmendments.

[30] Even if Congress sits "idly by". See discussion of Harvard Review note in § III.iii, *supra.*

Maryland, 79 U.S. 418, 20 L. Ed. 449 (1871). He should be able to freely travel between states, practice before a federal agency, without (regulatory) interference by a state where he has no meaningful contacts otherwise.

   *iii.   Unavailability of an adequate state forum.*

   The Supreme Court has identified bar complaint process akin to criminal proceedings. See discussion in § II.i.1, *infra*. The Court found that states are competent to afford parties subject to bar complaint protections under both state and federal law (with several exceptions discussed in § III, *infra.*). This leads Respondents to argue any personal Constitutional defenses Petitioner may raise should be done later before the WV OLDC and the WV Supreme Court - not in federal court

   But there is no forum for Petitioner to go to prevent Respondents from initiating or pursuing an investigation where it does not have jurisdiction. Respondents argue that Petitioner should simply wait out the investigation and participate in the investigation. After it concludes its investigation then Respondents invite him to raise any jurisdictional (issues) before it supreme court (but ultimately to the U.S. Supreme Court). This "process" provides Petitioner absolutely no forum for which to raise any jurisdictional disputes during this pre-investigation/investigation process. This creates a danger of "real and immediate injury"[31] to Mr. Eisenberg.

   Once Respondents investigation is concluded then they will publicly make its recommendation and findings. A disputed state charge against Mr. Eisenberg's professional fitness will irrevocable harm his professional reputation.[32] Substantive defenses aside,

---

   [31] *Rizzo v Goode* 423 U.S. 362 (1976).
   [32] In an action for libel, defamation in the form of a written publication, the plaintiff may lay a claim of defamation *per se* against the defendant if the defendant's statement is one that

Respondents have asserted they will not honor *Sperry*.  Thus, Mr. Eisenberg will find no

protection from Respondents submitting to *Sperry*.  Further, Mr. Eisenberg would fair no better

before the WV Supreme Court as Respondents are a function of the WV Court, have arbitrarily

determined *Sperry* does not apply and have told this court he may later seek redress at our

Supreme Court.  See Respondents' Memo at 11, fn 7.

IV. **Respondents' 11th Amendment is shortsighted and West Virginia Rule of Lawyer Disciplinary Procedure 2.7 is not relevant.**

Respondents' assertion of 11th Amendment immunity is incomplete and fails.

Respondents failed to provide that "[t]he States have consented . . . to some suits pursuant to the

plan of the [Constitutional] Convention *or to subsequent constitutional Amendments*".  *Alden*,

527 U.S. at 755.  While the Constitution and the 11th Amendment provided the states sovereign

immunity, the states relinquished some of their state sovereign immunity through the

---

tends to injure the plaintiff's reputation such that harm may be presumed and need not be shown. Restatement (Second) of Torts § 569 (1977); Restatement (Second) of Torts § 573 (1977). Traditionally, statements that, as a matter of law, tend to injure one's reputation include but are not limited to statements "imput[ing] to a person a criminal offense; a loathsome disease; [a] matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct." *Smith v. Clinton*, 253 F. Supp. 3d 222, 242 (D.D.C. 2017) (quoting *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978)); *see also Franklin v. Pepco Holdings, Inc.*, 875 F.Supp.2d 66, 75 (D.D.C. 2012) ("A statement is defamatory as a matter of law ... if it is so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation."); *Farnum v. Colbert*, 293 A.2d 279, 282 (D.C. 1972) ("[A] court can overlook an absence of facts related to damages if the slanderous words "inherently tend to damage a person's reputation"). Thus, for example, a statement to an attorney that they are unfit to practice law due to incompetence, dishonesty, or some other flaw of moral turpitude would constitute defamation *per se* as it directly impacts on the lawyer's professional reputation, and thus their livelihood. Restatement (Second) of Torts § 573 (1977).

Furthermore, Respondents who have worked in tandem in an attempt to deprive Mr. Eisenberg of his federal protections, appear to have conspired against him in violation of 18 U.S.C. § 241.

Constitution and the 14[33]th Amendment.[33]  The Courts have interpreted § Five of the 14th

Amendment as giving Congress power to abrogate state immunity.  See *Fitzpatric v. Bitzer*, 427

U.S. 455 (1976).

> [W]hen Congress acts pursuant to not only is it exercising legislative authority
> that is plenary within the terms of the constitutional grant, it is exercising that
> authority under one section of a constitutional Amendment whose other sections
> by their own terms embody limitations on state authority. [Thus], Congress may,
> in determining what is 'appropriate legislation' for the purpose of enforcing the
> provisions of the Amendment, provide for private suits against States or state
> officials which are constitutionally impermissible in other contexts.

Note:  *Federal Courts, Reconciling State Sovereign Immunity with the Fourteenth Amendment*,

129 Harv. L. Rev. 1068, 1069 Feb 10, 2016.  This has been interpreted to where the 14th

Amendment has been invoked, as it has been implicated here, the states must give "an effective

remedy for their unlawful conduct — even if Congress sits idly by." *Id. 1076.*  Respondents' W.

Va. R. Lawyer Disc. P. 2.7. may provide immunity to Ms. Rachel L. Flecher Cipoletti, and Ms.

Jessica H. Donahue Rhodes in their official capacity regarding state law; but it does not guarantee

them protection in the federal arena.

Each case Respondent cites to support its immunity argument fails as it is not similar to

*sub judice*.  In *Klayman v. Lim*, No. 18cv2209, 2019 WL 2396539 (D.D.C. June 5, 2019) and in

*Murphy v. Office of Disciplinary Counsel*, 2019 U.S. Dist. LEXIS 167650, and in *Stein v. Legal*

---

[33] Amendment XIV of the U.S. Constitution:

§ 1.  All persons born or naturalized in the United States, and subject to the jurisdiction
thereof, are citizens of the United States and of the state wherein they reside. No state shall make
or enforce any law which shall abridge the privileges or immunities of citizens of the United
States; nor shall any state deprive any person of life, liberty, or property, without due process of
law; nor deny to any person within its jurisdiction the equal protection of the laws.

…

§ 5.  The Congress shall have power to enforce, by appropriate legislation, the provisions
of this article.

*Adver. Comm. of the Disciplinary Bd.*, 272 F. Supp. 2d 1260 the respective petitioner was a member of the state bar and thus had the authority to regulate him.  In *Sibley v. Hergenroeder*, 2006 U.S. Dist. LEXIS 83951, petitioner was not only an applicant to the state bar but he maintained an office within the state.  In these cases, the state bars actually have jurisdiction to act; here, they do not.

The 11th Amendment does not stop a federal court from issuing an injunction against a state official who is violating federal law. Although the state official may be abiding by state law, he is not permitted to violate federal law, and a federal court can order him to stop the action with an injunction.  *Ex Parte Young*, 209 U.S. 123 (1908)  Money damages are possible against the state officer, as long as the damages are attributable to the officer himself, and are not paid from the state treasury.  *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  "Additionally, litigants may seek money damages from state officers personally under 42 U.S.C. § 1983, but this remedy **may** also be quite limited as state officers are entitled to qualified immunity.  See *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)."  Note: Federal C*ourts, Reconciling State Sovereign Immunity with the Fourteenth Amendment*, 129 Harv. L. Rev. 1068, 1069, fn 10 Feb 10, 2016 (emphasis added.)

> [A]lthough states and their citizens have tussled over the circumstances under which Congress can abrogate state sovereign immunity, the clash is largely beside the point whenever the 14th Amendment wades directly into the fray. In those cases, the 14th Amendment requires states to provide State officers are not protected against injunctive relief.

*Id*. 1076.

Last, the question remains if Ms. Rachel L. Flecher Cipoletti, and Ms. Jessica H. Donahue Rhodes were acting in their official capacity when they launched a baseless predetermined legal course of action that would ultimately be quashed by *Sperry*.  Presuming the WV Bar would not sanction such an activity and the State distances themselves from them, they would each be

exposed in their personal capacity.  Further, there is a real concern of how opposing counsel can represent potentially conflicting parties.

## V.  **Damages have been well pled.**

Respondents' assert that Petitioner, if he even may have damages, failed to provide a monetary figure.  The first question is whether damages sought are general damages or special damages.  The general rule for damage specificity in pleadings appears in FRCP 8a and 9g. Under FRCP 8a, general damages are resulting from what the Respondents knew or should have known what harm would come from their violation of federal law – undue stress created by a frivolous action not jurisdictionally prosecutable by Respondents, losing time and costs in protecting such rights, and punitive damages.  These damages need not be quantified in a complaint as they are likely unknown.  See FRCP 8a.

Under FRCP 9g, special damages are  "not the necessary consequence of [the] defendant's conduct, [but] stem from the particular circumstances of the case." 5 Wright & Miller, § 1310, at 700., *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002).  Further, "[m]ost courts do not treat punitive damages as special damages under Rule 9(g), § 1310 Pleading Special Damages—In General, 5A Fed. Pac. & Proc. Civ. § 1310 (4th ed.).

Petitioner has requested damages to be determined by the Judge, primarily because this matter is about obtaining an injunction to prevent Respondents from harming Petitioner through their violation of federal law.[34]  Further, general and punitive damages need not be specified. The damages sought are for the resulting harm caused by Respondents' abuse of power against

---

[34] In reference to Respondent's brief at 8, fn 6.

Petitioner by violating the Constitution and Federal law in their attempted invocation of jurisdiction for an investigation (and possible prosecution) were it does not exist for them.

Punitive damages for the State Agency and Actors' violation of Mr. Eisenberg's Constitutional/Federal rights as it relates to jurisdiction need not be pled.[35]  Rule 8a does not require a specific figure be provided.  Respondents' need to be held accountable, as an Agency, Agency Actors or as individual parties (if Ms. Rachel L. Flecher Cipoletti, and Ms. Jessica H. Donahue Rhodes are acting outside their authority by attempting to bring a baseless predetermined [to their detriment] investigation).

> Legal scholars have argued persuasively that the constitutional structure — even or especially in the context of a constitutionalized doctrine of state sovereign immunity — demands a measure of accountability for state violations of constitutional rights. That demand may not require a damages remedy against the state in every instance. But a damages remedy should be available in situations where other forms of relief are categorically inadequate. Such situations . . . require abrogation of state sovereign immunity pursuant to *Fitzpatrick*'s logic.

Note: *Federal Courts, Reconciling State Sovereign Immunity with the Fourteenth Amendment*, 129 Harv. L. Rev. 1068, 1078 Feb 10, 2016.

Lastly any attempt for the Respondents to lay blame on Mr. Eisenberg for making this matter "public" is without merit.  He is trying to prevent Respondents from proceeding in a manner that would inevitably reveal at minimum information that he has had to present here.

### Conclusion

---

[35] Petitioner has always asserted that the Federal Constitution and Laws have been violated by Respondents' in their unjustifiable pursuit to regulate him.  Because of the immediate and impending harm levied by Respondents' actions, Petitioner needed to take swift action.  If a more finite explanation as to which specific provisions in the Constitution, its Amendments and its relevant laws need to be provided, it is being done so in the concurrent Motion to Amend the Complaint (with its Amended Complaint).

The matter is simple – *Sperry* prohibits a state from regulating an attorney's practice where the sole connection to the attorney is that the federal agency's location is within its state boundaries.  A preponderance of the evidence, e.g., the facts that Petitioner only practices before a federal agency in WV, does not routinely travel to WV, does not maintain an office in WV, does not maintain a residence in WV and is not a member of its bar, clearly shows based on *Sperry*, its progeny and related cases that WV NEVER HAD JURISDICTION OVER PETITIONER AT ANY TIME.  Therefore, Mr. Eisenberg's motion for an injunction is likely to succeed!

This is not an issue of comity.  This Court is not being asked (at this time) to ensure that Mr. Eisenberg's Constitutional Rights are being protected during a judicial proceeding, e.g., an OLDC hearing or a court hearing.  Instead, this Court is asked to prevent OLDC and Ms. Rachel L. Flecher Cipoletti, and Ms. Jessica H. Donahue Rhodes, in both their individual and personal capacities, from intruding where the Constitution, Congress and our Supreme Court has spoken. The Supremacy Clause, through *Sperry* and its progeny, prevents states from disciplining parties who are not a member of their bars, are not residents of their states, do not maintain offices in their states or maintain routine contacts within their borders.

Wherefore, this Court should issue the requested injunction and provide damages as the Respondents are violating Petitioner's Constitutional Rights, e.g., Constitutional Amendment XIV, Art. IV, § 2, Cl, of the Constitution, abusing their power, e.g., 42 U.S.C. § 1983, and causing harm to his professional reputation.

Respectfully submitted,
*/s/ Michael D.J. Eisenberg*
MICHAEL D.J. EISENBERG
Bar # 486251
Law Office of Michael D.J. Eisenberg
700 12th Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 558-6371 (phone)
(202) 403-3430 (fax)
michael@eisenberg-lawoffice.com
*Pro Se*