# IN THE UNITED STATES DISCTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL D.J. EISENBERG,

      Plaintiff,                                       Case: 1:19-cv-03006-ABJ

v.

WEST VIRGINIA OFFICE OF DISCIPLINARY COUNSEL,
      a.k.a., Office of Lawyers Disciplinary Counsel, *et al.*,

      Defendants.

## REPLY IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

## I.    INTRODUCTION

Defendants West Virginia Office of Disciplinary Counsel a.k.a. Office of Lawyers Disciplinary Counsel ("OLDC"), Rachael L. Flecher Cipoletti, Chief Disciplinary Counsel OLDC, and Jessica H. Donahue Rhodes, Lawyer Disciplinary Counsel OLDC, submit this reply in support of their motion to dismiss Plaintiff Michael D.J. Eisenberg's amended complaint. Contrary to Eisenberg's argument, the sole issue is not whether Defendants have the "*constitutional jurisdiction* to begin and investigate [Eisenberg]." *See* ECF No. 20 at 2; *see also id.* at 4. Instead, the sole issue before this Court is whether Eisenberg's amended complaint, which seeks to enjoin disciplinary proceedings against Eisenberg in West Virginia, is barred by the abstention doctrine in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Under *Younger* and its progeny, this Court should not enjoin the pending state disciplinary proceedings, and Eisenberg has not sufficiently alleged bad faith or any other exception to *Younger* abstention.

In addition, Eisenberg has not sufficiently pled a claim for civil liability or damages, and Defendants are entitled to absolute immunity under the Eleventh Amendment and West Virginia Rule of Lawyer Disciplinary Procedure 2.7 in any event. Therefore, the Court should grant Defendants' motion to dismiss the amended complaint and the entire action with prejudice.

## II.   **DISCUSSION**

### A.   **This Court Should Reject Eisenberg's Argument that Defendants Do Not Have Jurisdiction to Conduct Disciplinary Proceedings Against Him.**

This Court should reject Eisenberg's argument that Defendants do not have jurisdiction to conduct disciplinary proceedings over him.  Contrary to Eisenberg's argument, the sole issue is not whether Defendants have the "*constitutional jurisdiction* to begin and investigate [Eisenberg]." *See* ECF No. 20 at 2; *see also id.* at 4.[1] Instead, the sole issue before *this* Court is whether Eisenberg's amended complaint, which seeks to enjoin disciplinary proceedings against Eisenberg in West Virginia, is barred by the abstention doctrine in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). As noted in Defendants' opening brief, while this Court has held that *Younger* abstention is non-jurisdictional in nature and is appropriately addressed in the context of Federal Rule of Civil Procedure 12(b)(6), *see Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 13 (D.D.C. 2016), the Court has on occasion analyzed *Younger* abstention in the context of Rule 12(b)(1), *see Yelverton v. Fox*, 997 F. Supp. 2d 1 (D.D.C. 2013); *Ford v. Tait*, 163 F. Supp. 2d 57, 67 (D.D.C. 2001). Accordingly, Defendants moved to dismiss the amended complaint pursuant to both Rules 12(b)(1) and 12(b)(6).  ECF No. 14-1 at 3.

Eisenberg's argument that Defendants have no jurisdiction over his federal activities within West Virginia puts the focus on the wrong court and turns any jurisdictional analysis on its head. Eisenberg's reliance on *General Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004), is misplaced. In *General Motors*, the Court stated only that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of *our* jurisdiction." (Emphasis added.)  Neither *General*

---

[1] Eisenberg's use of the terms "constitutional jurisdiction" and "jurisdiction" throughout his response is unclear.  At times, Eisenberg seems to refer to subject matter jurisdiction. *See, e.g.*, ECF No. 20 at 3–4.  At other times, Eisenberg seems to refer to personal jurisdiction. See, e.g., ECF No. 20 at 5. At still other times, Eisenberg seems to conflate the two types of jurisdiction.  *See, e.g.*, ECF No. 20 at 7.

*Motors* nor any other case cited by Eisenberg supports his attempt to collaterally attack the jurisdiction of the disciplinary proceedings against him in West Virginia. As discussed below, *State ex rel. York v. West Virginia Office of Disciplinary Counsel*, 231 W. Va. 183, 744 S.E.2d 293 (2013), demonstrates that West Virginia has adequate means to determine its own jurisdiction over disciplinary proceedings, including through use of a writ petition to the West Virginia Supreme Court of Appeals at the investigatory stage.

      *Sperry v. Florida*, 373 U.S. 379, 83 S. Ct. 1322, 10 L. Ed. 2d 428 (1963), offers no support for Eisenberg's collateral attack on the disciplinary proceedings filed against him in West Virginia. *Sperry* involved a petition for certiorari directly from the Supreme Court of Florida's permanent injunction of the petitioner, who was registered to practice before the United States Patent Office but not admitted to practice law before the Florida bar, from pursuing specified activities in Florida until and unless he became a member of the Florida bar. *Id.* at 381. The petitioner attacked the injunction only insofar as it prohibited him from engaging in specific activities covered by his federal license to practice before the Patent office. *Id.* at 382. The Court held that Florida's substantial interest in regulating the practice of law within the state was preempted by 35 U.S.C. § 31 and corresponding regulations, which explicitly granted unqualified authority to practice before the Patent Office by non-lawyers. *Id.* at 383–85. The Court explained that "*the right of nonlawyers to practice before each agency must be determined by reference to the statute and regulations applicable to the particular agency*[.]" *Id.* at 397 (emphasis added). Moreover, the Court noted that since patent practitioners are authorized to practice only before the Patent Office, *the state maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives. Id.* at 402 (emphasis added).

3

The District of Colorado recently rejected a similar collateral attack on state disciplinary proceedings that relied on *Sperry*. In *Ziankovich v. Large*, No. 17-cv-02039, 2017 WL 6033685 (D. Colo. Oct. 31, 2017), the plaintiff initiated an action in the District of Colorado challenging the legality and validity of the defendants' initiation of disciplinary proceedings against him. The court dismissed the action without prejudice under the *Younger* abstention doctrine given the ongoing state disciplinary proceedings.  The court expressly rejected the plaintiff's argument that *Younger* has been limited by *Sperry*. The court further explained that the plaintiff, who held a law license in New York[2] but practiced immigration law before the District of Colorado, the Executive Office of Immigration Review, and the Department of Homeland Security, did not cite nor was the court aware of any federal statutes or regulations similar to those at issue in *Sperry*.  *Id.* at *4. The Tenth Circuit reversed and remanded the action to consider the plaintiff's claims anew (expressly declining to comment on their merits), finding the *Younger* abstention doctrine no longer appropriate because the state disciplinary proceedings had concluded. *Ziankovich v. Large*, 745 F. App'x 800, 802 (10th Cir. 2018). On remand, the court converted the previously filed motion to dismiss to a motion for summary judgment and entered summary judgment for the defendants. The magistrate judge reasoned as follows:

> At bottom, Mr. Ziankovich's claims rest on his belief that Defendants lack jurisdiction to regulate his practice of federal law within Colorado because he is a New York attorney who does not practice in Colorado state courts.  Defendants argue, however, that Colorado has a strong public interest in regulating attorneys practicing law within Colorado, even if those attorneys practice only federal law. *See* [#52 at 6; #58 at 1–2].  Further, Defendants assert that such regulation does not undermine and/or conflict with federal laws and regulations that authorize the practice of law before federal courts and agencies, because Defendants do not seek to restrict Mr. Ziankovich's ability to do so.  *See* [#52 at 7–9; #58 at 1-2]. Indeed, Defendants contend, this practice is consistent with several other jurisdictions to consider the issue. *See* [#52 at 6–7].  For the following reasons, I respectfully

---

[2] The plaintiff in *Ziankovich* maintained legal offices in New York and Colorado, and his primary residence was in Colorado.  *Id.* at *1.

RECOMMEND that the Motion for Summary Judgment be GRANTED in this regard.

*Ziankovich v. Large*, No. 17-cv-02039, 2019 WL 4640803, at \*6 (D. Colo. May 31, 2019) (footnote omitted).

The magistrate judge in *Ziankovich* further rejected the plaintiff's reliance on *Sperry*, seeing no reason to diverge from the court's prior holding that *Sperry* is inapposite. *Id.* at \*7. Instead, the magistrate judge relied on *Gadda v. Ashcroft*, 377 F.3d 934, 943–46 (9th Cir. 2004), where the Court rejected the plaintiff's argument that the Supreme Court of California did not have authority to disbar him because he practiced exclusively in the immigration or federal courts of California. The magistrate judge found the reasoning in *Gadda* applicable to the plaintiff in *Ziankovich* even though he was an out-of-state lawyer practicing exclusively federal law in Colorado, explaining that the presiding disciplinary judge in Colorado has consistently found that Colorado Rule of Professional Conduct 8.5(a) provides jurisdiction to sanction out-of-state attorneys practicing in Colorado. *Id.* The magistrate judge in *Ziankovich* continued, relying on West Virginia law:

> Further, it is undisputed that Defendants *did not* aim to prohibit Mr. Ziankovich from practicing in federal court, but rather sought to discipline Mr. Ziankovich for his violations of Colorado's Rules of Professional Conduct that arose from his representation of clients before federal courts and agencies in Colorado. *See State ex rel. York v. West Virginia Office of Disciplinary Counsel*, 744 S.E.2d 293, 297–304 (W. Va. 2013) (holding that West Virginia had jurisdiction to discipline a New York attorney who practiced solely in federal court in West Virginia, because West Virginia had authority to govern the practice of law in the State and such regulation did not frustrate federal law as discipline would not prohibit the attorney from continuing to practice in federal court). . . .

> I conclude, then, that Defendants had jurisdiction to discipline Mr. Ziankovich for violations of Colorado's Rules of Professional Conduct even though he is an out-of-state attorney practicing solely before federal courts and agencies. Therefore, I respectfully RECOMMEND that any claims premised on Defendants' alleged lack of jurisdiction to discipline Plaintiff fail as a matter of law and that summary judgment enter in FAVOR of Defendants on such claims.

2019 WL 464083, at *8 (footnote omitted).[3] *Cf. Gillette v. Edison*, 593 F. Supp. 2d 1063, 1067–68 (D.N.D. 2009) (dismissing collateral attack on state disciplinary proceedings, rejecting plaintiff's argument that state court did not have jurisdiction to discipline him for alleged misconduct occurring in connection with litigation in Indian tribal court).

In this action, Eisenberg has not cited to a single case where the district court has denied a motion to dismiss based on the *Younger* abstention doctrine and allowed a collateral attack on ongoing state disciplinary proceedings, let alone on the jurisdictional basis he asserts. Rather than supporting Eisenberg's collateral attack on the West Virginia disciplinary proceedings against him, *Sperry* supports Defendants' position that Eisenberg may seek direct review in the Supreme Court if he ultimately believes that the West Virginia Supreme Court of Appeals has not adequately addressed any Constitutional claims raised during the disciplinary proceedings.  *See* 28 U.S.C. § 1257(a), (b). Like the court in *Ziankovich*, this Court should hold that the *Younger* abstention doctrine, has not been limited by *Sperry*.

In addition, like the plaintiff in *Ziankovich*, Eisenberg does not cite any federal statutes or regulations similar to those at issue in *Sperry*. Indeed, Eisenberg's amended complaint does not even identify the federal agency or agencies before which he practices.  Eisenberg's omissions in this regard also require dismissal of this action because the Court in *Sperry* explained that "*the right of nonlawyers to practice before each agency must be determined by reference to the statute and regulations applicable to the particular agency*[.]" *Sperry*, 373 U.S. at 397 (emphasis added).

---

[3] The district judge in *Ziankovich* entered an order affirming and adopting the recommendation of the magistrate judge and denying as moot the plaintiff's motion for a preliminary injunction on September 18, 2019.  *Id.* at ECF No. 77. The district judge further denied a motion for reconsideration on January 31, 2020.  *Id.* at ECF No. 84.  On reconsideration, the district judge again held that it committed no error with respect to relying on Colorado Rule of Professional Conduct 8.5, among other things, for determining that the Office of Attorney Regulation Counsel regulatory jurisdiction includes attorney licensed by other states who practice before federal courts and regulatory agencies in Colorado.  ECF No. 84 at 20.

Like the court in *Ziankovich*, this Court should reject Eisenberg's argument that *Sperry* applies because the amended complaint does not cite any federal statutes or regulations similar to those at issue in *Sperry* or even identify the federal agency or agencies before which Eisenberg practices.[4]

Moreover, as in *Ziankovich*, the OLDC disciplinary proceeding is only seeking to investigate alleged violations of the West Virginia Rules of Professional conduct. *See* ECF No. 8-2 (citing to West Virginia Rules of Professional Conduct 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.15(a), 1.15(c), 1.16(d), 8.4(b), 8.4(c), 8.4(d)). *State ex rel. York*, which was cited in *Ziankovich*, demonstrates that the West Virginia Supreme Court of Appeals and the OLDC are cognizant of both the scope and limits of *Sperry*. In *State ex rel. York*, the West Virginia Supreme Court of Appeals denied a writ petition seeking to compel the OLDC to cease further investigation of a patent attorney who practiced law in West Virginia but was not licensed by the West Virginia bar. The Court distinguished *Sperry* because the federal regulations at issue in *State ex rel. York* did not preempt state law. Among other things, the OLDC argued that it would not seek to suspend or expel the petitioner from his federal practice, and the Court noted that various disciplinary sanctions are available, including options that could be imposed in a manner which would not affect the petitioner's practice of patent law. *State ex rel. York*, 744 S.E.2d at 302–03 & n. 19.[5] Like the court in *Ziankovich*, this Court should reject Eisenberg's argument that *Sperry* applies because in the disciplinary proceedings against Eisenberg, the OLDC is only seeking to investigate alleged violations of the West Virginia Rules of Professional Conduct and the amended complaint Eisenberg has not identified a federal objective that has been frustrated by Defendants.

---

[4] Eisenberg's bald statement that Defendants have asserted that they will not honor *Sperry*, *see* ECF No. 22, is baseless. At this point, Eisenberg has not provided sufficient information for *Sperry* to apply even to a limited extent.
[5] Eisenberg does not dispute the holding in *State ex rel. York*, *see* ECF No. 20 at 2, 10. Instead Eisenberg attempts to distinguish *State ex rel. York* on the basis Eisenberg does not live in West Virginia. *See* ECF No. 20 at 2. However, the petitioner's residence was not the basis or the Court's holding in *State ex rel. York*.

Similar to *Ziankovich*, Defendants have jurisdiction over Eisenberg to conduct disciplinary proceedings even though he is an out of state attorney who claims to practice only before an unspecified federal agency or agencies in West Virginia. Colorado Rule of Professional Responsibility 8.5(a) and comment 1 thereto, which are quoted in relevant part in *Ziankovich,* 2019 WL 4640803, at *6, are identical to West Virginia Rule of Professional Conduct 8.5(a) and comment 1 thereto, and both are patterned from the ABA Modes Rules.[6] In addition to the portion of comment 1 quoted in *Ziankovich*, West Virginia Rule of Professional responsibility 8.5 comment 1 also provides in part that a lawyer who is subject to disciplinary authority in West Virginia under Rule 8.5(a) appoints an official to be designated by the West Virginia Supreme Court of Appeals to receive service of process in West Virginia and that the fact that a lawyer is subject to the disciplinary authority of West Virginia may be a factor in determining whether personal jurisdiction may be asserted over the lawyer for civil matters. *See* W. Va. R. of Lawyer Disciplinary P. 1 ("the Supreme Court of Appeals does hereby establish a Lawyer Disciplinary Board (Board) to investigate complaints of violations of the Rules of Professional Conduct . . . to govern the professional conduct of . . . any individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia and to take appropriate action in accordance with the provisions of the Rules of Lawyer Disciplinary Procedure"); *see also State ex rel. York*, 744 S.E.2d 293 at Syl. Pt. 5 ("Pursuant to Rule 1 of the West Virginia Rules of Lawyer Disciplinary Procedure, the West Virginia Rules of Professional Conduct govern the conduct of an attorney who practices law in this state or provides or offers to provide legal services in this

---

[6] As of June 15, 2017, 37 states (including the District of Columbia) have adopted the ABA Model Rules of Professional Conduct and comments, seven states have adopted the ABA Model Rules but not the comments, and six states have adopted the ABA Model Rules with no comments.  California is the only state not to have adopted the ABA Model Rules. See Am. Bar. Ass'n CPR Policy Implementation Comm., State Adoption of the ABA Model R. Prof. Conduct & Comments (2017), which is attached as Exhibit A.

state, even where such attorney's practice consists entirely of federal matters. In such circumstances, the West Virginia Office of Disciplinary Counsel and the West Virginia Lawyer Disciplinary Board have jurisdiction to investigate the alleged misconduct and recommend disciplinary action against the attorney regardless of whether the attorney is a member of the West Virginia State Bar."). Accordingly, like the court in *Ziankovich*, this Court should reject Eisenberg's argument that Defendants do not have jurisdiction to conduct disciplinary proceedings relating to his representation of West Virginia residents even though he is an out of state attorney who practices only before an unspecified agency or agencies in West Virginia.

### B.   All Three Criteria for *Younger* Abstention Apply.

Eisenberg's amended complaint is barred by the abstention doctrine in *Younger*. Eisenberg does not dispute that the *Younger* doctrine, based upon principles of equity and comity, 401 U.S. at 43–44, 915 S. Ct. at 750, precludes federal intervention where three criteria are met: 1) there are ongoing state proceedings that are judicial in nature, 2) the state proceedings implicate important state interests, and 3) the proceedings afford an adequate opportunity to raise the federal claims. *Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996) (citing *Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989)). Eisenberg's argument that the criteria for *Younger* abstention are not met is specious.

With regard to the first *Younger* criteria, Eisenberg seemingly disputes the Supreme Court's conclusion in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 433, 102 S. Ct. 2515, 2522, 73 L. Ed. 2d 116 (1982), which extended *Younger* to attorney disciplinary proceedings, that attorney disciplinary proceedings constitute ongoing state judicial proceedings, because "*[f]rom the very beginning a disciplinary proceeding is judicial in nature,*

*initiated by filing a complaint.*"   *Id.*, 457 U.S. at 433, 102 S. Ct. at 2522 (emphasis added). This

Court further explained in *Ford* as follows:

> When the remaining prongs of the *Younger* test are satisfied, "*federal courts should
> refrain from enjoining lawyer disciplinary proceedings initiated by state ethics
> committees if the proceedings are within the appellate jurisdiction of the
> appropriate state Supreme Court.*"   32A AM. JUR. 2D *Federal Courts* § 1303
> (1995); *see also Middlesex*, 457 U.S. at 431–32, 102 S. Ct. 2515.

163 F. Supp. 2d at 65 (emphasis added).

Other courts have rejected arguments, like Eisenberg's argument, that a state bar

disciplinary proceeding at the investigation stage is not an ongoing judicial proceeding. For

example, in *Mason v. Florida Bar*, No. 6:05-cv-627, 2005 WL 3747383 (M.D. Fla. Dec. 16, 2005),

the court found that state bar proceedings against the plaintiff commenced when the bar opened an

inquiry file, soundly rejecting the plaintiff's argument that no state proceedings were commenced

until the matter was referred to the grievance committee.  *Id.* at *3–4. The Court reasoned in part

that if it were to accept the plaintiff's argument lawyers who receive notice of a disciplinary

investigation could easily circumvent *Younger* by filing a federal action before the grievance

committee received the matter, causing many state proceedings involving attorney conduct to

become federal cases.  *Id.* at *4.  In addition, the court collected cases reaching a similar result as

follows:

> Courts addressing this issue have consistently found that early stages of a bar's
> disciplinary procedures constitute ongoing judicial proceedings for purposes of
> *Younger.  Amanatullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160,
> 1163 (10th Cir. 1999) (for purposes of *Younger*, state proceedings began on the day
> the board of medical examiners issued its first letter advising doctor of its
> investigation into allegations regarding his conduct and requesting information
> regarding the allegations); *Wightman v. Texas Supreme Court*, 84 F.3d 188 (5th
> Cir. 1996) (in matter where attorney made controversial statements in a motion and
> in letters to the court and to opposing counsel in which he attacked the character of
> certain state judges, the court upheld *Younger* abstention where disciplinary
> proceedings were still in their early stages and had not yet gone before investigatory
> panel grievance committee), cert. denied, 519 U.S. 1080, 117 S. Ct. 744, 136 L. Ed.

682 (1997); *Hirsch*, 67 F.3d at 708 (disciplinary proceedings were ongoing after attorneys received notices to show cause); *Berger*, 983 F.2d at 718 (upholding *Younger* abstention when attorneys filed federal action in the midst of grievance committee's investigation but before formal complaint was filed), cert. denied, 508 U.S. 940, 113 S. Ct. 2416, 124 L. Ed. 2d 639 (1993); *Mason v. Departmental Disciplinary Comm.*, 894 F.2d 512 (2d Cir. 1990) (*Younger* abstention upheld where committee was conducting inquiry by letter, and prior to deadline for responding, accused attorney sought federal court intervention), cert. denied, 497 U.S. 1025, 110 S. Ct. 3274, 111 L. Ed. 2d 784 (1990); *Stein v. Legal Advertising Comm. of the Disciplinary Bd.*, 272 F. Supp. 2d 1260 (D.N.M. 2003) (finding that attorney disciplinary proceedings commenced for purposes of *Younger* when letter was sent to attorney apprizing him of an investigation and requiring him to respond, but attorney filed lawsuit instead).

*Id.* at *3.

In this action as in *Mason* and cases cited therein, the disciplinary proceedings against Eisenberg in West Virginia constitute ongoing judicial proceedings within the meaning of *Middlesex*. As admitted in the amended complaint, a West Virginia couple filed complaints with the OLDC against Eisenberg.  *See* ECF No. 13 at 3.  The complaints were consolidated under OLDC Docket # 19-05-198.  *See* ECF No. 13 at 2.  In accordance with the West Virginia Rules of Disciplinary Procedure 2.4 and 2.5, by letters dated May 21, 2019, the OLDC notified Eisenberg of the complaints and requested verified responses within 20 days.  The letters explained the process and stated that the requests are lawful demands for information pursuant to West Virginia Rule of Professional Conduct 8.1(b).  *See* ECF No. 8-2. The OLDC has sent two additional letters requesting a verified response on June 18, 2019 and September 24, 2019.  *See* ECF Nos. 8-3, 8-4. On October 7, 2019, Eisenberg filed his original complaint in this Court rather than providing the requested verified response to the OLDC. *See* ECF No. 1. Eisenberg demands among other things an Order that Defendants dismiss the case in West Virginia.  *See* ECF No. 13 at 5.  As the court explained in *Mason*, if this Court accepts Eisenberg's argument then lawyers who receive notice of a disciplinary investigation could easily circumvent *Younger* by filing a federal action before

the grievance committee received the matter, causing many state proceedings involving attorney conduct to become federal cases.

With regard to the second *Younger* criteria, Eisenberg does not dispute the Supreme Court's conclusion in *Middlesex* that state attorney disciplinary proceedings are the type of civil enforcement proceeding that involve vital state interests because disciplinary proceedings bear a close relationship to criminal proceedings. *See Middlesex*, 457 U.S. at 432–34, 102 S. Ct. at 2521–22 ("The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice."); *see also Ford*, 163 F. Supp. 2d at 66 ("The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice.").

Eisenberg offers no support for his argument that Respondents have no interest in Eisenberg because they have no jurisdiction over him, and he is wrong on both counts. As discussed above, among other sources of jurisdiction, West Virginia Rule of Professional Conduct 8.5(a) provides jurisdiction over Eisenberg.  Rule 8.5(a) provides in pertinent part that "[a] lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction."  As comment 1 to Rule 8.5 explains, *"[e]xtension of the disciplinary authority of this jurisdiction to other lawyers who provide or offer to provide legal services in this jurisdiction is for the protection of the citizens of this jurisdiction*."  (Emphasis added.)

In addition, West Virginia Rule of Disciplinary Procedure 1 provides both a statement of interest and jurisdiction as follows:

> *The standard of professional ethics and conduct of the bench and bar is of the highest importance to the people of the State of West Virginia and to the members of the legal profession.* Every member of the legal profession shall observe the highest standards of professional conduct. In furtherance of this goal, *the Supreme Court of Appeals does hereby establish a Lawyer Disciplinary Board (Board) to investigate complaints of violations of the Rules of Professional Conduct promulgated by the Supreme Court of Appeals to govern the professional conduct of those admitted to the practice of law in West Virginia or any individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia and to take appropriate action in accordance with the provisions of the Rules of Lawyer Disciplinary Procedure.* . . .

(Emphasis added.) *See State ex rel. York*, 744 S.E.2d at 295–96, Syl. Pt. 5 (relying on West Virginia Rule of Lawyer Disciplinary Procedure 1 to hold that OLDC and Lawyer Disciplinary Board have jurisdiction to investigate alleged misconduct and recommend disciplinary action against an attorney who practices law or provides or offers to provide legal services in West Virginia even where attorney's practice consists entirely of federal matters).

Accordingly, pursuant to West Virginia Rule of Professional Conduct 8.5(a), West Virginia Rule of Lawyer Disciplinary Procedure 1, and *State ex rel. York*, West Virginia has both a strong interest in and jurisdiction over any lawyer who provides or offers to provide legal services in West Virginia in order to promote the interests of protecting its citizens and maintaining the standard of professional ethics and conduct of the bench and bar. As recognized in *State ex rel. York*, West Virginia's interest and jurisdiction is subject to the limited exception in *Sperry* only insofar as specific statutes and regulations applicable to a particular agency preempt state interests and jurisdiction. Eisenberg has not even identified the federal agency or agencies before which he practices let alone any federal statutes and regulations similar to those at issue in *Sperry*. This Court should hold in accordance with *Middlesex* and its progeny including *Ford* that Defendants have met the second *Younger* criteria.

13

With regard to the third *Younger* criteria, contrary to Eisenberg's unsupported argument the West Virginia disciplinary proceedings and any appeals offer an effective forum for adjudicating the Eisenberg's federal claim under the Supremacy Clause. Out of "[m]inimal respect for the state processes," courts may not "*presume[e]* that the state courts will not safeguard federal constitutional rights." *Middlesex*, 457 U.S. at 431, 102 S. Ct. at 2521.  Indeed, this Court reached a similar conclusion in *Ford* as follows:

> [I]n this case, there is no barrier to the D.C. Court of Appeals hearing the plaintiff's constitutional claims.  As the Supreme Court emphasized, "[m]inimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights."  *Middlesex*, 457 U.S. at 431, 102 S. Ct. 2515.  District of Columbia case law demonstrates that the D.C. Court of Appeals can hear federal claims arising from attorney disciplinary proceedings. . . . Moreover, the defendants note that the plaintiff will have an opportunity to raise these claims before the D.C. Court of Appeals.

163 F. Supp. 2d at 66.

In addition, in *Yelverton*, the Court expressly rejected the plaintiff's arguments that *Younger* abstention did not apply because the Board of Professional Responsibility's Ad Hoc Hearing Committee denied his constitutional claims and because the complaint alleged that the defendant and the Office of Bar Counsel created extraordinary circumstances by acting in bad faith and harassing the plaintiff. The Court reasoned that the plaintiff's lack of success with the constitutional claims he raised before the Ad Hoc Hearing Committee did not mean that the entire disciplinary process lacked the authority to consider the plaintiff's constitutional claims.  997 F. Supp. 2d at 5.

In this action, Defendants presented Eisenberg's issue regarding jurisdiction to the investigative panel of the OLDC during a meeting held on September 21, 2019.  The investigative panel rejected Eisenberg's argument and found that under West Virginia Rule of Professional Conduct 8.5(a) he has provided and offered to provide legal services in West Virginia, and,

therefore, is subject to the disciplinary authority in West Virginia.  Eisenberg does not dispute that

he may continue to raise his jurisdictional issue in the disciplinary proceedings, including any

appeals to the West Virginia Supreme Court of Appeals and petitions to the United States Supreme

Court that he may or may not believe necessary.  *See* ECF No. 10 at 14.[7]  In fact, other courts have

recognized that the West Virginia Supreme Court of Appeals offers an "adequate opportunity" to

adjudicate federal claims in the context of disciplinary proceedings.  *See Scotchel v. Karlin*, No.

2:17cv03353, 2018 WL 1512378, at *3 (S.D. W. Va. Mar. 26, 2018) (granting motion to dismiss

where the plaintiff's claims were addressed and ruled against in disciplinary proceedings affirmed

by the West Virginia Supreme Court of Appeals), *aff'd sub nom.*, *Schotchel v. Rhodes*, 764 F.

App'x 302 (4th Cir. 2019); *Dostert v. Neely*, 537 F. Supp. 912, 918 (S.D. W. Va. 1982) (granting

motion to dismiss where plaintiff admitted that he raised all his constitutional objections in

disciplinary proceedings before judicial review board and West Virginia Supreme Court of

Appeals). As this Court found in *Yelverton*, Eisenberg's lack of success with the jurisdictional

issue presented to the investigative panel of the OLDC does not mean that the entire disciplinary

---

[7] Contrary to Eisenberg's argument Defendants' reference to these additional avenues of direct review in their opening brief in no way "signals" what the West Virginia Supreme Court of Appeals might hold.  Defendants simply explained that the third factor of *Younger* is met because the West Virginia disciplinary proceedings and any appeals offer an effective forum for adjudicating Eisenberg's federal and jurisdictional claims if and when Eisenberg may seek review. *See Ford*, 163 F. Supp. 2d at 66 (District of Columbia case law demonstrates that the D.C. Court of Appeals can hear federal claims arising from attorney disciplinary proceedings. . . . *Moreover, the defendants note that the plaintiff will have an opportunity to raise these claims before the D.C. Court of Appeals*) (emphasis added). Eisenberg's suggestion that Defendants have an improper relationship with the West Virginia Supreme Court of Appeals is baseless and frivolous.

In addition, Eisenberg's repeated assertions that he has not received or will not receive due process in future disciplinary proceedings, ECF No. 20 at 14, 19, 22, is equally baseless and frivolous. The OLDC has given Eisenberg more than adequate notice and opportunity to be heard, providing copies of the complaints filed against him and requesting a verified response in three separate letters. *See* ECF NOS. 8-2. 8-3, 8-4. Eisenberg has refused to provide the requested verified response and has only made a limited appearance to contest jurisdiction. *See* ECF Nos. 20-1, 20-2, 20-3. Eisenberg has been and will continue to be afforded due process in the disciplinary proceedings in West Virginia. Manifestly, the problem with West Virginia Disciplinary proceedings is not a lack of due process; rather, the problem is Eisenberg's refusal to participate in the process.

proceedings, including the appellate process, lacks authority to reconsider and review the federal and jurisdictional issue.

### C. No Exception to Younger Abstention Applies.

Eisenberg's argument that the exceptions to the *Younger* doctrine apply are equally specious. In *Klayman v. Fox*, No. 18cv1579, 2019 WL 2396538 (D.D.C. June 5, 2019) ("*Klayman I*"), and *Klayman v. Lim*, No. 18cv2209, 2019 WL 2396539 (D.D.C. June 5, 2019) ("*Klayman II*"), this Court dismissed similar actions based in part on the *Younger* abstention doctrine. The Court rejected the plaintiff's argument that the bad faith exception to *Younger* abstention applied, concluding that the plaintiff failed to allege sufficient facts to support the application of the bad faith exception as follows:

> *It bears emphasis, yet again, that the bad-faith exception is a "narrow" one, and that, if accepted, Plaintiff's theories would allow the exception to swallow the rule. It is not this Court's role to decide whether the disciplinary charges pending against Plaintiff are well-founded or whether Plaintiff is likely to ultimately prevail. The question is not whether other state bars have declined to pursue similar charges or whether everyone on the ODC team agrees with each decision the office has made. The only issue before this Court is whether Plaintiff has alleged specific facts that, if accepted as true, plausibly show that the ODC is proceeding without a reasonable expectation of success.* Plaintiff has failed to satisfy that burden.

*Klayman I*, 2019 WL 2396538, at *10 (citation omitted) (emphasis added). *See Klayman II*, 2019 WL 2396539, at *4 (dismissing plaintiff's claims for injunctive relief and damages as barred by *Younger* abstention for the same reasons as *Klayman I*); *see also Yelverton*, 997 F. Supp. 2d at 6 (concluding upon review of allegations that disciplinary counsel harassed the plaintiff and pressured a client to file a complaint with the D.C. Bar that the plaintiff did "not cite any authority that the conduct he alleges . . . rises to the level of bad faith, harassment, or extraordinary circumstances that would justify declining to exercise equitable restraint").

The amended complaint does not allege any hostility whatsoever let alone the required extraordinary circumstances, bad faith, or harassment to create an exception to *Younger* abstention. The amended complaint alleges only that the OLDC ordered Eisenberg to provide a response to the complaints filed with the OLDC against him by October 18, 2019. Rhodes asked for Eisenberg's cooperation, invoking West Virginia Rule of Professional Conduct 8.5. Cipoletti also invoked Rule 8.5 in her communications with Eisenberg. ECF No. 13 at 4. As discussed above, Eisenberg has not even identified the federal agency or agencies before which he practices let alone any federal statutes or regulations similar to *Sperry* that might preempt the jurisdiction conferred pursuant to Rule 8.5(a) in any way. Defendants requests of Eisenberg were not in bad faith or harassing.

Eisenberg's brief quotes a portion of the passage above from *Klayman I* (although misattributes it to a different case) and exclaims that he is not asking this Court to render an opinion on the merits of the underlying claims. *See* ECF No. 20 at 15. Nonetheless, without any support whatsoever except a gross misconstruction of Defendants' footnoted explanation of the direct appeals process afforded in disciplinary proceedings, Eisenberg argues in a cryptic manner that "[s]ince [Defendants] are officers of the WV Supreme Court, the potential procedures (as this injunction is proposed to prevent from starting) are pre-determined – that *Sperry* will not be applied properly, and thus concluding the State of WV will not provide a fair proceeding for [Eisenberg]." *See id.* at 17; *see also id.* at 19, 22. As noted above, Defendants simply explained, similar to the defendants in *Ford*, that the third factor of *Younger* is met because the West Virginia disciplinary proceeding and any appeals offer an effective forum for adjudicating Eisenberg's federal and jurisdictional claims.

In addition, Eisenberg's argument that Defendants do not provide a meaningful process for review of their assumption of jurisdiction during the investigative process is wholly without merit. In fact, as discussed above *State ex rel. York* was decided on a petition for a writ to the West Virginia Supreme Court of Appeals.  In *State ex rel. York*, the petitioner argued that there was no jurisdiction to investigate his alleged misconduct or to recommend disciplinary action against him because he was not a licensed member of the West Virginia bar and was not practicing law in West Virginia.  *See* 744 S.E.2d at 296.  The Court decided the petition on the merits although it ultimately denied the requested relief, distinguishing *Sperry* and holding that there was jurisdiction over the petitioner.  *Id.* at 304.  *See also* W. Va, R. App. P. 16 (procedure for writs filed in West Virginia Supreme Court of Appeals).  Thus, in addition to a direct appeal at the conclusion of the disciplinary proceeding in West Virginia, *State ex rel. York* and Rule 16 allow Eisenberg to file a petition for a writ with the West Virginia Supreme Court of Appeals seeking immediate review of OLDC's investigatory proceedings.

Eisenberg's argument that West Virginia Rule of Professional Conduct 8.5, which as discussed above is an adoption of ABA Model Rule 8.5, violates the federal Constitution resulting in an exception to *Younger* that and makes Rule 8.5 ripe to strike down is bizarre. The amended complaint seeks no such relief. Eisenberg's argument in this regard does not identify a federal Constitutional provision allegedly violated, except in a footnote that appears to separately argue that further there may be what amounts to an improper tax in violation of the 5th and 14th Amendments. *See* ECF No. 20 at 20. As noted above, 49 states have adopted the ABA Model Rules of Professional Conduct. Eisenberg has cited no case where any court has struck down ABA Model Rule 8.5. Manifestly, this Court should not refuse to abstain under *Younger* in order to strike down West Virginia Rule of Professional Conduct 8.5 as Eisenberg requests.

**D.      The Amended Complaint Does Not Adequately Plead a Claim for Civil
Liability or Damages and Defendants Have Immunity in Any Event.**

To the extent Eisenberg may be attempting to establish civil liability against Defendants

for intentional infliction of emotional distress ("IIED"), the amended complaint should be

dismissed. In this action, although the amended complaint alleges that Defendants may be civilly

liable to Eisenberg, he does not adequately state the elements of a claim or allege any facts to

support a claim against Defendants.  The amended complaint does not adequately plead a claim of

IIED under either West Virginia or District of Columbia law.  *See, e.g., Goodwin v. City of*

*Shepherdstown*, 241 W. Va. 416, 825 S.E.2d 364, Syl. Pt. 2 (2019) (dismissing claim of IIED

under West Virginia law, applying four element test); *Smith v. Clinton*, 886 F.3d 122, 129 (D.C.

Cir.) (dismissing claim of IIED under District of Columbia law, applying three element test), *cert.*

*denied*, 139 S. Ct. 459, 202 L. Ed. 2d 362 (2018). Eisenberg's response does not even address this

pleading deficiency under Rule 12(b)(6).

Moreover, the amended complaint does not demand damages as a form of relief sought as

required under Federal Rule of Civil Procedure 8(a)(3) (requiring pleading to include demand for

relief sought, which may include relief in alternative or different types of relief).[8] Contrary to

Eisenberg's argument, Defendants do not contend that Eisenberg failed to provide a monetary

figure.  *See* ECF No. 20-25.  Instead, Defendants contend that Eisenberg *only* demands equitable

relief and does not demand damages as a form of relief in his amended complaint. *See* ECF No.

14-1 at 13.  The amended complaint does not include the terms "damages" or "money" or any

similar words that might fairly put Defendants on notice that the demand for relief sought in the

---

[8] Eisenberg's citation to Rule 8(a) and Federal Rule of Civil Procedure 9(g) in the context of a discussion of general and special damages misses the point.  The amended complaint simply does not contain a demand for general or special damages (or any other type of damages) within the meaning of Rule 8(a)(3)'s requirement for a demand for the relief sought.

amended complaint includes damages. The problem is not that Eisenberg failed to provide a monetary figure in his amended complaint, the problem is that Eisenberg failed to adequately demand any damages as opposed to equitable relief.[9]

In *Ford*, this Court dismissed the entire action under the *Younger* abstention doctrine, including a claim for damages under 28 U.S.C. § 1983.  Because the plaintiff sought primarily equitable relief, the Court did not reach the merits of the defendants' motion to dismiss for failure to state a claim, their judicial-immunity argument, or their assertion that the Court lacked jurisdiction under the *Rooker-Feldman* doctrine. 163 F. Supp. 2d at 67.  This action is similar to *Ford* insofar as Eisenberg argues that he "has requested damages to be determined by the Judge, *primarily because this matter is about obtaining an injunction*[.]" ECF No. 20 at 25 (emphasis added).

Moreover, although the Court in *Klayman I* recognized that *Younger* did not necessarily resolve the plaintiff's claim for damages, the Court dismissed the plaintiff's damages claims on the grounds that the District of Columbia Office of Disciplinary Counsel was not subject to suit and its employees were entitled to absolute immunity.  *Id.* at *10–12.

In this action, any claim for IIED and any claim for damages in the second amended complaint should be dismissed for failure to adequately state a claim and the relief sought. Alternatively, as in *Ford* the entire amended complaint should be dismissed under *Younger* abstention because the amended complaint seeks primarily if not exclusively equitable relief. Finally, as the Court reasoned in *Klayman I*, the OLDC is not subject to suit and Cipoletti and Rhodes are entitled to absolute immunity. The OLDC was established by the West Virginia

---

[9] The civil cover sheet similarly identifies this action as seeking a temporary restraining order/preliminary injunction and does not indicate that there is a monetary demand.

Supreme Court of Appeals for the purpose of aiding the Court in investigating and prosecuting ethical violations claims.  W. Va. R. Lawyer Disc. P. 4.  OLDC and its employees are absolutely immune from civil suit in the same manner as members of the judiciary in West Virginia for any conduct in the course of their official duties.  W. Va. R. Lawyer Disc. P. 2.7.  *See Grondin v. Wood Cty. Prosecutors Office*, No. 6:13cv11095, 2014 WL 794257, at *13–14 (S.D. W. Va. Feb. 27, 2014) (OLDC immune from suit); *Ward v. Plymale*, No. 3:12cv06186, 2013 WL 6164277, at *18–19 (S.D. W. Va. Nov. 25, 2013) (OLDC immune from suit under Eleventh Amendment).

## III.  <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request the Court to grant their motion and enter an Order dismissing Plaintiff's amended complaint and the entire action with prejudice.

Dated this 3rd day of February 2020.

*/s/  Amy M. Smith*
Amy M. Smith (DC Bar #421379)
amy.smith@steptoe-johnson.com
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV  26330
(304) 933-8000

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of February 2020, I electronically filed the foregoing "Reply in Support of Defendants' Motion to Dismiss Amended Complaint" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participant:

> Michael D.J. Eisenberg, *Pro Se*
> Law Office of Michael D.J. Eisenberg
> 700 12th Street, N.W., Suite 700
> Washington, DC  20005
> O: (202) 558-6371 F: (202) 403-3430
> E-Mail: Michael@Eisenberg-Lawoffice.com

> */s/  Amy M. Smith*
> Amy M. Smith (DC Bar #421379)

10850369.1