UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL D.J. EISENBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-3006 (ABJ) |
| ) | |
| WEST VIRGINIA OFFICE ) | |
| OF DISCIPLINARY COUNSEL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Michael D.J. Eisenberg, a lawyer, has sued the West Virginia Office of Lawyer Disciplinary Counsel ("OLDC"); Rachael L. Fletcher Cipoletti, the Chief Disciplinary Counsel of the OLDC who is named in her personal and official capacity; and Jessica H. Donahue Rhodes, a lawyer at the OLDC who is also named in her personal and official capacity. Am. Compl. [Dkt. # 13] ¶¶ 3–6. Eisenberg objects to the defendants' efforts to investigate a complaint that was lodged against him by a client, a West Virginia resident who alleged that he violated the West Virginia Rules of Professional Conduct. *See generally* Am. Compl. He submits that the defendants' actions were arbitrary, capricious, contrary to federal law, and unsupported by substantial evidence. Am. Compl. ¶¶ 11, 26. In particular, he alleges that defendants have violated the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, and that they have intentionally caused him emotional distress. Am. Compl. at 1. He seeks injunctive relief in the form of a Court order requiring defendants to dismiss the pending West Virginia matter, as well as declaratory relief and other forms of relief. Am. Compl. ¶¶ 30–34. Defendants have moved to dismiss the amended complaint on the grounds that the Court is precluded from entertaining the case under

the *Younger* abstention doctrine.  Defs.' Mot. to Dismiss the Am. Compl. [Dkt. # 14] ("Defs.' Mot."); Defs.' Mem. in Supp. of Defs.' Mot. [Dkt. # 14-1] ("Defs.' Mem.").  The Court agrees that the doctrine applies, and it will decline to intervene in pending state bar disciplinary proceedings and dismiss this case.[1]

## BACKGROUND

Before May 21, 2019, plaintiff, an attorney based in Washington, D.C., was retained by a West Virginia resident to represent the Resident in a matter before a federal agency.  Am. Compl. ¶¶ 3, 7, 9.  In the course of the representation, plaintiff appeared before a federal agency that was located in West Virginia.  Am. Compl. ¶ 9.

On or about May 21 and May 23, 2019, defendant Rhodes contacted plaintiff to inform him that the Resident and her husband had filed a complaint against him with the West Virginia Office of Lawyer Disciplinary Counsel ("OLDC"),[2] a West Virginia State government agency. Am. Compl. ¶¶ 4, 11.  When plaintiff inquired with Rhodes about the OLDC's jurisdiction over an attorney who had never been a member of the West Virginia State Bar, she responded by citing *State Ex. Rel. York v. W.Va. Office of Disc. Counsel*, 744 S.E.2d 293 (W. Va. 2013), as a case that supported what plaintiff describes as "her alleged position."  Am. Compl. ¶¶ 12–14.

After reviewing the case, plaintiff informed Rhodes that in his view, the case did not apply because: "a) [plaintiff] does *not* maintain an office in West Virginia;  b) [plaintiff] does *not* regularly conduct business in West Virginia;  c) [plaintiff] does *not* practice Patent Law[] in West

---

1   Because the Court will dismiss this case based on the *Younger* doctrine, it does not need to take up defendants' other objections to the complaint.

2   The Court notes that the proper name of the agency is the Office of Disciplinary Counsel not the Office of Lawyer Disciplinary Counsel.  *See* Office of Disciplinary Counsel, http://www.wvodc.org/ (last visited June 23, 2020).

Virginia, and; . . . d) [plaintiff] does *not* practice in West Virginia agencies, state or federal courts." Am. Compl. ¶ 15.  In response, according to the complaint, Rhodes "merely repeated Rule 8.5 of the West Virginia Rules of Professional Conduct ("Rule 8.5")." Am. Compl. ¶ 16.

From on or about September 30, 2019, plaintiff communicated with defendant Cipoletti at the OLDC to "explain the situation" and "discuss the law and the facts." Am. Compl. ¶ 17. Plaintiff "reminded . . . Cipoletti that this matter falls under *Sperry v. Florida*, 373 U.S. 379 [] (1963)," and he transmitted his previous communications with Rhodes. Am. Compl. ¶¶ 18–19. Cipoletti allegedly responded by repeating Rule 8.5 without commenting on plaintiff's position. Am. Compl. ¶ 20.  When plaintiff asked for Cipoletti's response position regarding his filing a preliminary injunction, Cipoletti purportedly responded, "how could she provide her position when she had yet received the 'injunction?'" Am. Compl. ¶¶ 21–22.

Plaintiff filed the original complaint in this matter, along with a motion for a preliminary injunction, on October 7, 2019.  Compl. [Dkt. # 1]; Mot. for Prelim. Injunction [Dkt. # 2]. Defendants moved to dismiss on November 8, 2019.  *See* Def.'s Mot. to Dismiss [Dkt. # 8]. On December 2, 2019, plaintiff filed the Amended Complaint.  He seeks declaratory and injunctive relief in the form of an order directing the defendants to dismiss the OLDC case, among other forms of relief.  *See* Am. Compl. ¶¶ 30–34.  Defendants moved to dismiss on December 16, 2019, Defs.' Mot., and the matter is fully briefed.[3]

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all

---

3   *See* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss [Dkt. # 20] ("Pl.'s Opp."); Defs.' Reply in Supp. of Defs.' Mot. to Dismiss [Dkt. # 24] ("Defs.' Reply").

inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

I.  **Subject Matter Jurisdiction**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint."

*Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning*, 292 F.3d at 242. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.     The *Younger* Doctrine

The *Younger* doctrine requires that "except under special circumstances," a federal court should not "enjoin pending state court proceedings." *Younger v. Harris*, 401 U.S. 37, 41 (1971); *see Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626–27 (1986) (extending *Younger* to a pending state administrative proceeding); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 594 (1975) (extending *Younger* to pending civil state court proceedings). The doctrine

is based upon principles of equity and comity, *see Younger*, 401 U.S. at 43–44, and it precludes federal intervention where three criteria are met: 1) there are ongoing state proceedings that are judicial in nature, 2) the state proceedings implicate important state interests, and 3) the proceedings afford an adequate opportunity to raise the federal claims.  *Hoai v. Sun Ref. Mktg. Co.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989), citing *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982).  Extraordinary circumstances may supply grounds for a federal court to intervene when the state action was brought in bad faith or where a state statute is flagrantly unconstitutional *JMM Corp. v. Dist. of Columbia*, 378 F.3d 1117, 1127 (D.C. Cir. 2004), citing *Younger*, 401 U.S. at 41, 53–54.

The Supreme Court has reasoned that the *Younger* doctrine applies to noncriminal judicial proceedings, including pending administrative proceedings where important state interests are involved.  *See Moore v. Sims*, 442 U.S. 415, 423 (1979); *Middlesex*, 457 U.S. at 434.  The Court has specifically extended this reasoning to cover to state bar disciplinary proceedings.  *See Middlesex*, 457 U.S. at 434.

In *Middlesex*, the Court held that state bar disciplinary proceedings underway in New Jersey against a New Jersey-licensed attorney constituted a "judicial" action because the Supreme Court of New Jersey, which was vested with "the authority to fix standards, regulate admissions to the bar, and enforce professional discipline among members of the bar," recognized the "local District Ethics Committees . . . as the arm of the court in performing the function of receiving and investigating complaints and holding hearings."  457 U.S. at 433.  The Court found that the State had "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses," and it recognized that "[s]tates traditionally have exercised extensive control over the professional conduct of attorneys," because "[t]he judiciary as well as the public is

7

dependent upon professional ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *Id*. at 434–35.

The Court also addressed the respondent's claim that a federal court should hear the matter because he had no opportunity to raise federal constitutional claims in the state disciplinary proceedings. It found that because the respondent had "failed to respond to the complaint filed by the local Ethics Committee," and the record did not indicate that the members of the Ethics Committee would have refused to consider a constitutional claim, it was "difficult to conclude that there was no adequate opportunity for respondent [] to raise his constitutional claims." *Middlesex*, 457 U.S. at 435–36. The Court reiterated its instruction in *Younger* that "'the accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Id*. at 435, quoting *Younger*, 401 U.S. at 45.

Since *Middlesex*, the D.C. Circuit has upheld a district court's invocation of the abstention doctrine in cases involving an action by the District of Columbia Bar, where an appellant "has not demonstrated changed or extraordinary circumstances that would warrant federal intervention in the state court proceedings." *Lawrence v. Carlin*, No. 13-7017, 2013 WL 6801204, at *1 (D.C. Cir. Dec. 11, 2013). And courts in this district have held that boards of professional responsibility created by state courts, have "inherent power over members of the legal profession." *Ford v. Tait*, 163 F. Supp. 2d 57, 65 (D.D.C. 2001) (internal quotation omitted); *see also Lawrence v. Carlin*, 541 F. Supp. 2d 189, 193 (D.D.C. 2008). In a case similar to this one, a court in this district also abstained from intervening in a state bar proceeding in Florida against an attorney who was

based in the District of Columbia.  *See Richardson v. The Florida Bar*, Civ. Action No. 90-0984, 1990 WL 116727, at **1, 4 (D.D.C. May 15, 1990).

II. **Application of the *Younger* Doctrine and its progeny to this case**

To determine whether defendants have properly invoked the abstention doctrine as grounds to dismiss a plaintiff's claims, a court must undertake the three-part analysis set forth by the Supreme Court in *Middlesex*:  first it must determine if there are ongoing state proceedings that are judicial in nature, second it must consider whether the state proceedings implicate important state interests, and finally, it must be satisfied that the proceedings afford an adequate opportunity to raise the federal claims.  *Middlesex*, 457 U.S. at 432.

With respect to the first question, the West Virginia OLDC proceeding is judicial in nature.  Like the District Ethics Committees in *Middlesex*, the Lawyer Disciplinary Board in West Virginia was established by the Supreme Court of Appeals of West Virginia

> to investigate complaints of violations of the Rules of Professional Conduct promulgated by the Supreme Court of Appeals to govern the professional conduct of those admitted to the practice of law in West Virginia *or any individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia* and to take appropriate action in accordance with the provisions of the Rules of Lawyer Disciplinary Procedure.

W. Va. R. of Law. Disc. P. 1 (emphasis added).  Under Rule 2 of the West Virginia Rules of Lawyer Disciplinary Procedure, the Investigative Panel of the Lawyer Disciplinary Board is charged with determining "whether probable cause exists to formally charge a lawyer with a violation of the Rules of Professional Conduct," W. Va. R. of Law. Disc. P. 2, and pursuant to Rule 3, "[t]he Hearing Panel . . . shall conduct hearings and make findings of fact, conclusions of law, and recommendations of lawyer discipline to the Supreme Court of Appeals on formal charges filed by the Investigative Panel." W. Va. R. of Law. Disc. P. 3.  In addition, Rule 8.5 of the West

Virginia Rules of Professional Conduct specifically provides that "[a] lawyer not admitted in [West Virginia] is also subject to the disciplinary authority of the jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction."  As was the case in *Middlesex*, these rules show that the Supreme Court of West Virginia has conferred on the OLDC the power to carry out "judicial" actions to ensure that attorneys who practice in West Virginia abide by that state's professional rules.

And the case here is certainly ongoing.  According to the complaint, the OLDC complaint was filed on or about May 21, 2019, and the OLDC has issued an order directing plaintiff to respond.  *See* Am. Compl. ¶¶ 11, 23.  The whole point of the lawsuit is to have this Court direct the defendants to "dismiss their alleged case," Am. Compl. ¶ 32, so the complaint is premised on the fact that the case is ongoing.  The first prong of the test is, therefore, met.

With respect to the second prong of the test, whether the proceedings implicate important state interests, Comment One to Rule 8.5 states that "[e]xtension of the disciplinary authority of the jurisdiction to other lawyers who provide or offer to provide legal services in this jurisdiction is for the protection of the citizens of this jurisdiction."  And both the Supreme Court in *Middlesex* and courts in this district have found that ensuring that practicing attorneys abide by the ethical rules in the jurisdictions where they practice is a significant state interest.  *See Middlesex*, 457 U.S. at 434; *Lawrence*, 541 F. Supp. 2d at 193; *Richardson*, 1990 WL 116727, at *4.  West Virginia shares that same interest in this case.

So the Court will move on to the final step in the test:  assessing whether plaintiff is afforded an adequate opportunity to raise his federal claims in the pending state proceeding.  Importantly, although the OLDC is charged with investigating complaints of attorney misconduct, holding hearings, and making findings of fact and conclusions of law, it ultimately does not have

the power to make final determinations about formal charges against attorneys. *See* W. Va. R. of Law. Disc. P. 3. Instead, that power falls to the Supreme Court of Appeals. *See id*. (explaining that the Hearing Panel of the Lawyer Disciplinary board "shall . . . make recommendations of lawyer discipline to the Supreme Court of Appeals on formal charges filed by the Investigative Panel."). Indeed, cases from the Supreme Court of Appeals reinforce that "the exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals." *State ex rel. York v. W. Va. Office of Disciplinary Counsel*, 744 S.E.2d 293, 298 (2013); *see also Lawyer Disciplinary Bd. V. Allen*, 479 S.E.2d 317, 324 (1996) (holding that attorneys who solicit clients within West Virginia but are not barred in and do not practice in the state are subject to discipline by the Court). And *Middlesex* instructs that "[m]inimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." 457 U.S. at 431.

Like the claimant in *Middlesex,* plaintiff has not yet answered, and he has not even tried to assert a constitutional claim. Nor has he alleged any facts to show that if the OLDC recommended action against him, he would be precluded from presenting constitutional arguments to the West Virginia Supreme Court of Appeals. For those reasons, the Court finds based on the information before it that plaintiff's right to raise his federal claims in West Virginia is adequately protected.

### III.   *Younger* exceptions

In *Younger*, the Supreme Court advised that there may be "extraordinary circumstances" in which a plaintiff will suffer irreparable injury by being foreclosed from obtaining injunctive relief in federal court. 401 U.S. at 53. And the D.C. Circuit has explained that "[s]uch extraordinary circumstances include situations in which 'there is a showing of bad faith or harassment by state officials . . . or where the state law to be applied . . . is flagrantly and patently

11

violative of express constitutional prohibitions.'"" *JMM Corp.*, 378 F.3d at 1122 (D.C. Cir. 2004), quoting *Trainor v. Hernandez*, 431 U.S. 434, 443 n.7 (1977).

Plaintiff alleges that defendants should be held liable for "harassing and intimidating [him] by mailing threatening communications and causing substantial emotional distress." Am. Compl. ¶ 29. But neither the OLDC officials' tone nor the fact that plaintiff understandably found the pendency of this investigation to be stressful is relevant to the availability of the *Younger* exception; the Supreme Court has instructed that harassment is found when a court determines that the state proceeding "is *motivated by* a desire to harass." *Huffman*, 420 U.S. at 611 (1975) (emphasis added). Here, plaintiff has failed to allege any facts that give rise to a plausible inference that defendants – who allegedly received the complaint brought by plaintiff's client and undertook to process it – were motived by a desire to harass him. In the communications recounted in the complaint, the defendants are quoted as seeking plaintiff's response in accordance with OLDC procedures and responding to plaintiff's inquiries about the scope of their jurisdiction. So plaintiff has not identified any basis to invoke any exception to the *Younger* doctrine.

## CONCLUSION

For the foregoing reasons, the Court finds that the *Younger* doctrine applies to this case and plaintiff has failed to demonstrate any circumstances that would warrant the Court's

intervention in the state proceedings.  For that reason, the Court will abstain for reasons equity and comity and dismiss the action.[4]  A separate Order will issue.

*Amy B Jackson*
AMY BERMAN JACKSON
United States District Judge

DATE: June 30, 2020

---

[4]   Based on the Court's determination that the *Younger* abstention doctrine applies to this case, defendant's Motion for Leave to File a Second Amended Complaint [Dkt. # 22] is denied as futile.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 425-26 (D.C. Cir. 1995) ("futility of the amendment" is one of the factors a court must consider in evaluating whether to grant leave to amend).  *See also James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend as futile . . . if the proposed claim would not survive a motion to dismiss.").